RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM

Counsel for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>OSTENDO TECHNOLOGIES, INC.<br>a California corporation,<br><br>       Debtor and Debtor in Possession. | Case No.: 1:25-bk-11111-VK<br><br>Chapter 11 Case<br><br>**NOTICE OF SUBMISSION OF REDLINES OF DISCLOSURE STATEMENT AND CHAPTER 11 PLAN**<br><br>**<u>Hearing Schedule:</u>**<br>Date:         May 13, 2026<br>Time:        1:00 p.m.<br>Place:       Courtroom 301<br>              21041 Burbank Blvd.<br>              Woodland Hills, CA 91367 |

Ostendo Technologies, Inc., the debtor and debtor in possession in the above-referenced chapter 11 case (the "<u>Debtor</u>"), hereby files this Notice of Submission of the following redlines:

1

1.  A redline comparing the *Disclosure Statement Describing Debtor's Chapter 11 Plan (Dated January 20, 2026)* to the *Disclosure Statement Describing Debtor's Chapter 11 Plan (Dated April 10, 2026)*, which redline is attached as **Exhibit 1** to this Notice[1]; and

2.  A redline comparing the *Debtor's Chapter 11 Plan (Dated January 20, 2026)* to the *Debtor's Chapter 11 Plan (Dated April 10, 2026)*, which redline is attached as **Exhibit 2** to this Notice.

Dated: April 10, 2026                                OSTENDO TECHNOLOGIES, INC.


By:   */s/ Krikor J. Meshefejian*
RON BENDER
KRIKOR J. MESHEFEJIAN
LEVENE, NEALE, BENDER, YOO
& GOLUBCHIK L.L.P.
Counsel for Chapter 11 Debtor and
Debtor in Possession

---

[1] The redline does not contain Exhibits to the Disclosure Statement. Parties in interest should review and compare the Exhibits to the Disclosure Statement separately.

# EXHIBIT "1"

RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM

Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

1

In re:

OSTENDO TECHNOLOGIES, INC.,
a California corporation,

           Debtor and Debtor in Possession

Case No.: 1:125-bk-11111-VK

Chapter 11 Case

**DISCLOSURE STATEMENT
DESCRIBING DEBTOR'S CHAPTER
11 PLAN (DATED** ~~JANUARY 20~~APRIL
10**, 2026)**

Disclosure Statement Hearing:
DATE:      ~~TBD~~May 6, 2026
TIME:      ~~TBD~~1:00 p.m.
PLACE:     Courtroom 301
           21041 Burbank Blvd.
           Woodland Hills, CA 91367

Plan Confirmation Hearing:
DATE:      TBD
TIME:      TBD
PLACE:     Courtroom 301
           21041 Burbank Blvd.
           Woodland Hills, CA 91367

2

## I.    INTRODUCTION

Ostendo Technologies, Inc., the Debtor and Debtor in Possession in the above-referenced Chapter 11 bankruptcy case (the "Debtor"), is the Debtor in a pending Chapter 11 bankruptcy case.  On June 24, 2025 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. ("Bankruptcy Code").  This document is the Disclosure Statement which describes the Debtor's Chapter 11 Plan (Dated April 10, 2026) ("Plan") that is being proposed by the Debtor.

Chapter 11 allows the Debtor, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization or liquidation.  The Plan is a plan of liquidation which has been proposed by the Debtor.  The effective date of the Plan (the "Effective Date") will be the first business day which is at least fifteen days following the date of entry of the Bankruptcy Court order confirming the Plan (the "Plan Confirmation Order") when and provided that all of the following conditions to the effectiveness of the Plan have been satisfied or waived by the Debtor: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) the Plan and all documents, instruments and agreements to be executed in connection with the Plan have been executed and delivered by all parties to such documents, instruments and agreements.

### A.    Purpose of this Disclosure Statement

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Bankruptcy Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

(1)      **WHO CAN VOTE OR OBJECT**,

(2)      **WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION**,

(3)      **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING ITS BANKRUPTCY CASE**,

(4)      **WHAT THINGS THE BANKRUPTCY COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN**,

(5)      **WHAT IS THE EFFECT OF CONFIRMATION, AND**

(6)      **WHETHER THE PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as this Disclosure Statement. If there are any inconsistencies between the Plan and this Disclosure Statement, the Plan provisions will govern.

The Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan. The Bankruptcy Court has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B.      Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE. HOWEVER, IF THE BANKRUPTCY COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

## 1. Time and Place of the Plan Confirmation Hearing

The hearing where the Bankruptcy Court will determine whether or not to confirm the Plan (the "Plan Confirmation Hearing") will take place on _____ ____, 2026, at __:___ __.m., before the Honorable Victoria S. Kaufman, United States Bankruptcy Judge for the Central District of California, in Courtroom 301, located at 21041 Burbank Blvd., Woodland Hills, California 91367.

## 2. Deadline For Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Krikor J. Meshefejian, Esq., Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Avenue, Los Angeles, California 90034, or via email to Krikor J. Meshefejian, Esq, at KJM@LNBYG.COM.

Your ballot must be received by __:__ _.m., PST, on _____ ___, 2026 or it will not be counted.

**IF YOU DO NOT TIMELY VOTE FOR OR AGAINST THE PLAN, THE DEBTOR WILL REQUEST THE BANKRUPTCY COURT TO TREAT YOU AS HAVING VOTED TO ACCEPT THE PLAN.**

## 3. Deadline for Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must, by _____ ____, 2026, be filed with the Bankruptcy Court and served by same day service upon Krikor J. Meshefejian, Esq., Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Avenue, Los Angeles, California 90034, email:KJM@LNBYG.COM.

## C. Identity of Persons to Contact for More Information Regarding the Plan

Any interested party desiring further information about the Plan should contact Krikor J. Meshefejian, Esq., Levene, Neale, Bender, Yoo & Golubchik L.L.P., 2818 La Cienega Avenue, Los Angeles, California 90034, email:KJM@LNBYG.COM.

## D. Disclaimer

The financial data relied upon in formulating the Plan is based on the Debtor's books and records which, unless otherwise indicated, are unaudited. The information contained in this

5

Disclosure Statement is provided by the Debtor.  The Bankruptcy Court has not yet determined whether or not the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

**II.      BACKGROUND**

**A.      Description and History of the Debtor's Business and a Summary of the Circumstances that Led to the Filing of the Debtor's Chapter 11 Case**

On June 24, 2025, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtor has operated its business and managed its affairs as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor was founded in 2005 by Dr. Hussein S. El-Ghoroury and others to develop display technologies and products for commercial, consumer and government markets.  Dr. El-Ghoroury served as the Chairman and the Chief Executive Officer of the Debtor from its inception until his termination in September 2024.

During the past 20 years, the Debtor raised nearly $300 million in equity and government funding and explored options to go public.  The Debtor developed hardware and software technologies including the "Quantum Photonic Imager" core technology and showed early promise in diverse and large markets from augmented reality glasses and holographic displays to solar energy and energy storage.

Unfortunately, as a result of what the Debtor's current management believes to be serious mismanagement of the Debtor and its financial and business affairs by the Debtor's former management, including, without limitation, the incurrence of debt obligations without required Board approvals, attempts to transfer assets to third parties without requisite Board approval or corporate authority, using corporate assets for personal purposes and without Board oversight or approval, the failure to renew and protect valuable patents, and the failure to pay employees and other creditors resulting in numerous lawsuits being filed against the Debtor, the Debtor has been forced to cease operations.  Such conduct is also believed to have given rise to various potential claims against former officers and directors of the Debtor and others, including for breach of fiduciary duty, fraud, misrepresentation, misappropriation of corporate assets, broker-deal

6

misconduct, and other related tortious acts. In September 2024, as a result of such mismanagement, the Board of Directors of the Debtor terminated Dr. El-Ghoroury's employment with the Debtor and appointed Barak Bussel as Interim CEO.  Dr. El-Ghoroury disputes the Debtor's contentions and filed a declaration in this case on August 19, 2025 at Docket No. 73 setting forth his contentions regarding the events preceding the Debtor's bankruptcy filing and the actions of the Debtor's current management.

Dr. El-Ghoroury believes that the estate owns pre-petition derivative claims against the Debtor's current management for breach of fiduciary duty.  Specifically, Dr. El-Ghoroury filed a complaint against Barak Bussel and Babak Razi on March 27, 2025, individually and derivatively on behalf of the Debtor, for breach of fiduciary duty and negligence, among other causes of action. Dr. El-Ghoroury contends that Messrs. Bussel and Razi are the principals of Third Wave Ventures, LLC, a majority investor in the Debtor, and are also members of the Debtor's board of directors. According to Dr. El-Ghoroury, Mesrs. Bussel and Razi allegedly:

1. Breached their fiduciary duties of loyalty and good faith by failing to act in the Debtor's best interests and instead acting in their own self-interest.

2. Prevented the Debtor from filing bankruptcy or restructuring when it would have been in the Debtor's interest to do so because a bankruptcy would have complicated their personal efforts to settle a separate lawsuit filed against them by another investor, Brian Kennedy, who alleged that Messrs. Bussel and Razi had knowingly lied to him and breached their fiduciary duties in connection with other companies they controlled.

3. Engaged in self-dealing at the Debtor's expense, including when Mr. Bussel allegedly unilaterally opened a 20,000 square foot office in Beverly Hills paid for with Ostendo's funds, hired approximately 15 employees to develop a prototype videogame platform without the Debtor's approval, and then allegedly absconded with the program's intellectual property when the venture collapsed—costing Ostendo millions of dollars.

4. Schemed to move Ostendo's intellectual property to a Chinese company that one or both of them (or Third Wave Ventures, LLC) controlled for their own personal benefit.

5.      Blocked a deal with Avalanche Quantum Energy, LLC that would have

7

allegedly saved the Debtor, settled its various lawsuits, and allowed the Debtor to continue using its patented technology to bring products to market—because accepting the deal would have interfered with their alleged plan to acquire the Debtor's intellectual property for their own benefit.

6. Threatened to "tank" potential deals so that they could "just get the company for nothing" and buy the Debtor's intellectual property cheaply, and then demanded a nearly seven-month exclusivity period that prevented Ostendo from seeking alternative funding while creditors' demands escalated.

7. Manufactured false allegations against Dr. El-Ghoroury, orchestrated a board takeover by handpicking new board members, and then terminated Dr. El-Ghoroury's employment so that they could take control of the company and its intellectual property for their own personal benefit.

Dr. El-Ghoroury's derivative complaint seeks damages of up to $20,000,000 for the Debtor, plus punitive damages.

The Debtor's current management expressly denies and disputes all of Dr. El-Ghoroury's allegations and contends that those allegations omit material facts and fail to account for substantial claims and defenses available.

The Debtor has asserted, including in a pending cross-complaint filed prior to the Petition Date, that prior to his termination, Dr. El-Ghoroury engaged in unauthorized and self-interested conduct, including alleged repeated unilateral actions taken without Board knowledge or approval, diversion of company assets and opportunities, failure to preserve and protect elements of the Debtor's patent portfolio and other key assets, concealment or misstatement of liabilities, misrepresentation of the company's financial condition to investors and others, conduct that the Debtor contends violated applicable broker-dealer laws, rules, and regulations and other federal and state securities laws, including, without limitation, alleged misrepresentation and omissions of material facts to investors and prospective investors, and conduct inconsistent with his fiduciary and contractual obligations to the Debtor. The Debtor also contends that Dr. El-Ghoroury repeatedly violated his fiduciary and other duties to the Debtor, and that such conduct

8

directly caused, or at a minimum materially contributed to, the Debtor's demise and the destruction of more than $300 million of shareholder value.

The Debtor further contends that it may possess claims arising from the alleged unauthorized use, transfer, filing, development, commercialization, or attempted commercialization of intellectual property associated with the Debtor's solar energy, energy storage, and other technologies, whether by Dr. El-Ghoroury acting alone or with third parties.

These asserted matters include, without limitation, alleged efforts to convey or exploit rights relating to such technologies through or with third parties or affiliated entities, alleged post-termination patent filings or applications concerning technology that the Debtor contends is identical, substantially similar to, or derivative of Ostendo intellectual property, and alleged related research, development, fundraising, or commercialization discussions involving third parties, including university personnel, investors, and business counterparties.

The Debtor's investigation into these matters remains ongoing, and no determination has been made by any court with respect to the merits of Dr. El-Ghoroury's claims, the Debtor's defenses, or any related claims and counterclaims the Debtor may assert or pursue. Accordingly, while Dr. El-Ghoroury contends that the estate owns derivative claims against current management, the Debtor believes there are substantial disputes concerning both liability and ownership of any such claims, as well as substantial countervailing claims that may belong to the Debtor or its estate based on alleged misconduct by Dr. El-Ghoroury and others in connection with the Debtor's assets and intellectual property.

At the time of Dr. El-Ghoroury's departure, the Debtor was left with approximately $22 million - $25 million of debt obligations, no commercial traction for the Debtor's technology or products, at least seven – and now more – lawsuits/legal actions where the Debtor was named a defendant, no active employees, no remaining facilities, except for one warehouse space which housed the Debtor's remaining physical assets, no access to technical or other information on the Debtor's servers due to mismanagement of IT, and an intellectual property portfolio in distress due to the lapse of key patents due to lack of payment and other questionable decision making.

9

Over the course of the following approximately nine months, the Debtor's current management undertook efforts to assess the Debtor's financial situation and obligations, secure any remaining cash and other assets of the Debtor, engage professionals to advise on potential options and communicate with stakeholders the Debtor's financial situation.

After considering its options, the Debtor determined that it would be in the best interest of the Debtor and its creditors to file this bankruptcy case and stay pending eviction proceedings and other litigation and pursue a sale (or sales) of assets, reorganization, or a combination of sales and a reorganization, under chapter 11 of the Bankruptcy Code, in order to maximize recoveries to stakeholders.

This bankruptcy case was filed to preserve and to maximize the value of the Debtor's assets (comprised primarily of intellectual property and equipment) for the benefit of creditors, address various pre-petition litigation commenced against the Debtor across multiple venues in a single forum, and monetize the Debtor's assets for the greatest recoveries possible, and reorganize or otherwise wind down the affairs of the Debtor in an orderly and efficient manner.

**B.      Significant Events Which Have Occurred During The Debtor's Chapter 11 Bankruptcy Case**

**1.      The Debtor's Emergency Bidding Procedures Motion**

The Debtor initially sought to obtain post-petition financing from Rowen Innovations, LLC ("Rowen") and filed a motion for entry of an order authorizing the Debtor to borrow up to $1,000,000 to fund post-petition administrative expenses pending the completion of a sale process. Dr. El-Ghoroury filed an opposition to the Debtor's motion and the Court conducted an interim hearing on that motion and expressed certain issues with the proposed financing. The Court continued the interim hearing on the Debtor's post-petition financing motion in order for the Debtor to provide supplemental information and support for the motion and to ascertain whether Rowen was willing to provide financing on different terms. After discussions with Rowen and considering the issues raised by the Court and objections raised, the Debtor withdrew the motion for post-petition financing because it appeared to the Debtor that any effort to obtain the financing offered by Rowen would be contested and would likely require an expensive and time-consuming

evidentiary hearing which would have detracted the Debtor's efforts from conducting an efficient, comprehensive marketing and sale process.

Instead, the Debtor immediately filed an emergency motion for approval of the Debtor's bidding and sale procedures (the "Bidding Procedures Motion") so that the Debtor could immediately conduct a sale process.  On August 29, 2025, the Court entered an order approving the Bidding Procedures Motion and approving the Debtor's bidding procedures.

**2.      The Debtor's Emergency Cash Collateral Motion**

Similarly, after withdrawing the post-petition financing motion, the Debtor immediately filed an emergency cash collateral motion seeking to use limited cash on hand to pay for very limited expenses such as insurance and utilities.  The Court approved the cash collateral motion on an interim, and then later, on a final, basis.

**3.      The Debtor's Employment of Professionals**

The  Debtor filed and obtained Court approval of its application to employ Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG") as its bankruptcy counsel, and its application to employ Sherwood Partners, Inc. ("Sherwood") as its sale agent and financial advisor (the Debtor originally sought to retain Andrew De Camara of Sherwood as the Debtor's Chief Restructuring Officer but after discussions with the United States Trustee opted to withdraw that portion of the application to employ Sherwood and proceed with Sherwood as only a sale agent and financial advisor).

**4.      The Debtor's Plan Exclusivity Motion**

The Debtor filed a motion to extend its exclusive period of time to file a plan and exclusive period of time to obtain plan acceptance.  The Court granted the Debtor's motion and extended the Debtor's plan exclusivity periods to January 20, 2026, and March 20, 2026, respectively.

**5.      The Debtor's Motion To Extend the Deadline to Assume A Real Property Lease**

The Debtor filed a motion to extend the deadline to assume or reject its real property lease of the premises located at 6231 Yarrow Drive, Suites A&B, Carlsbad, CA 92011, from October 22, 2025, through and including January 20, 2026.  The Debtor resolved issues raised by the landlord for that premises and the Court entered an order on October 22, 2025 granting that motion.

**6.    The Debtor's Sale of Assets to Rowen and Sale Outcome**

On November 7, 2025, the Court entered an order approving the Debtor's sale of certain of its assets to Rowen, for a purchase price of $2.5 million, $2.4 million of which is allocated to intangible intellectual property assets (the "Intangible Intellectual Property Sale Proceeds") and $100,000 of which is allocated to tangible intellectual property assets (the "Tangible Intellectual Property Sale Proceeds").  That sale closed on November 7, 2025, and the entirety of the purchase price was paid by Rowen by that date.  Approximately $2.175 million of the sale proceeds is virtually unencumbered cash because there are only two secured creditors that have a lien against intangible assets of the Debtor – the U.S. Small Business Administration, asserting a claim in the amount of $147,601.38, and Rowen, with a scheduled claim in the amount of $71,738, plus interest.  Pursuant to orders of the Court, the Debtor has already paid or is authorized to pay for certain administrative expenses of the estate using the $2.4 million of proceeds from the sale of intangible intellectual property assets, as follows:

1.   Allowed fees and expenses of professionals of the estate totaling $393,462.52, on an interim basis.

2.   Post-petition administrative rent to RIF II – Yarrow Drive II, LLC, in the amount of $180,563.71(*see* Docket No. 224).

3.   Expenses authorized to be paid pursuant to the Court's order approving the Second Cash Collateral Order, which have been paid to date, in the total amount of $429,554.76.

4.   Clean-up and waste removal expenses authorized to be paid pursuant to the Court's order approving the Landlord Stipulation (defined below), which have been paid to date, in the total amount of $75,409.48.

Accordingly, there is available as of the date of the filing of this Disclosure Statement a total of approximately $1,825,973.771,321,009.53 of remaining intangible intellectual property sale proceeds (the "Available Intangible IP Cash").

**7.    The Status of the Debtor's Equipment Sale Efforts**

12

The Debtor is attempting to sell its equipment assets (the "Equipment") and a hearing on the Debtor's sale of the Equipment is presently scheduled for January 21, 2026.  If the Debtor is able to reach an agreement to sell the Equipment, and if the Court approves such sale agreement and such sale closes, the Debtor anticipates that the sale of Equipment will generate additional sale proceeds (together with the Tangible Intellectual Property Sale Proceeds, the "Potential Tangible Personal Property Sale Proceeds").  The Equipment does not include that certain lab equipment known as the "Oxford PlasmaLab 100 Serial Number: 94-220011" (the "Moov Equipment").

Separately, on December 31, 2025, the Court entered that certain *Order Granting Debtor's Motion For An Order Approving Sale Of Equipment Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests* (the "Moov Equipment Sale Order") (Doc 233) pursuant to which the Debtor is authorized to sell its right, title and interest in and to the Moov Equipment to Moov Technologies, Inc. for the purchase price of $30,000 (the "Moov Equipment Proceeds").  The Moov Equipment Proceeds was paid to the Debtor on January 15, 2026.

**8.      The Debtor's Carve-Out Stipulation with Certain Secured Creditors**

On December 17, 2025, the Debtor filed that certain *Stipulation Between Debtor, John Douglas Pierce, RAF Pacifica Group-Real Estate Fund II, LLC And NextMed III Owner, LLC Regarding Carve-Out Of Proceeds Of Sale Of Tangible Personal Property* (the "Carve-Out Stipulation") (Doc 215).

On February 4, 2026, the Debtor filed that certain *Amended Stipulation Between Debtor, John Douglas Pierce, RAF Pacifica Group-Real Estate Fund II, LLC And NextMed III Owner, LLC Regarding Carve-Out Of Proceeds Of Sale Of Tangible Personal Property* (the "Amended Carve-Out Stipulation") (Doc 253).

Pursuant to the Amended Carve-Out Stipulation, the Debtor proposed and Mr. Pierce, RAF and NextMed agreed to an alternative sale process to sell the Equipment (the "Alternative Sale Process"), as follows:

1.      David Behzadi (a member of the Debtor's board of directors) will oversee the sale of the Equipment as  Mr. Behzadi has substantial expertise with the Equipment

and, prior to the Petition Date, successfully sold a number of the Debtor's tangible personal property while maximizing recovery on each item.

2.       Mr. Behzadi would be designated as the party responsible for selling the Equipment and would manage and oversee all aspects of the sales process.

3.       Mr. Behzadi will receive from the proceeds of the sale of the Equipment reimbursement for travel expenses based on actual, documented expenses incurred, subject to a cap of $25,000 (the "Travel Expense Reimbursement").

4.       Mr. Behzadi will receive 25% of the gross proceeds of the sale of Equipment (the "Success Fee"), the Debtor's estate will receive a $100,000 Carve-Out from the sale of Equipment, and the remaining proceeds of the sale of the Equipment will be distributed Mr. Pierce, RAF and NextMed under the Debtor's Chapter 11 Plan as described below.

5.       Mr. Behzadi will use commercially reasonable efforts to sell as many items of Equipment as practicable, at the highest prices reasonably achievable.

Pursuant to the Amended Carve-Out Stipulation, Mr. Pierce, RAF and NextMed have agreed to: (1) the sale of the Equipment pursuant to Alternative Sale Process free and clear of their respective liens, claims, encumbrances and interests and (2) a carve-out from their respective liens against the Potential Tangible Personal Property Sale Proceeds, the Travel Expense Reimbursement, the Success Fee, and the sum of $100,000 for the benefit of the Debtor's estate (the "Carve-Out"), and to release their respective liens against the Travel Expense Reimbursement, the Success Fee and the Carve-Out.

Pursuant to the Amended Carve-Out Stipulation, Mr. Pierce, RAF and NextMed have also agreeagreed to: (1) release their respective liens, claims, encumbrances and interests in the Moov Equipment, subject to Moov Technologies, Inc. paying to the estate the Moov Equipment Proceeds and (2) carve-out from their respective liens against the Moov Equipment the sum of $10,000 for the benefit of the Debtor's estate (the "Moov Equipment Proceeds Carve-Out"), and to release their respective liens against the Moov Equipment Carve-Out.

The Debtor, Mr. Pierce, RAF and NextMed have agreed that sum of the (1) Potential Tangible Personal Property Sale Proceeds plus (2) Moov Equipment Proceeds, *less* the (a) ~~Carve-Out and (b)~~Travel Expense Reimbursement (up to $25,000); (b) Success Fee; (c) Carve-Out and (d) Moov Equipment Proceeds Carve-Out, respectively (the "Secured Potential Tangible Personal Property Sale Proceeds"), shall be distributed pursuant to the Plan ~~to be filed by the Debtor~~, subject to Court approval and the consent of the United States Small Business Administration ("SBA") and Rowen (which each assert secured claims against all assets, including the Intangible Personal Property Sale Proceeds and the Potential Tangible Personal Property Sale Proceeds), as follows:

      a.     $105,000 to Mr. Pierce, in full settlement and satisfaction of the Pierce Secured Claim, with Mr. Pierce waiving any right to accrued or additional interest, fees or costs on account of the Pierce Secured Claim, provided, however, that nothing set forth herein shall reduce the general unsecured claim of Mr. Pierce;

      b.     The remaining Secured Potential Tangible Personal Property Sale Proceeds after the Travel Expense Reimbursement, Success Fee, the Carve-Out, the Moov Equipment Proceeds Carve-Out and the payment of $105,000 to Mr. Pierce, shall be distributed on a pro rata basis between RAF and NextMed on account of the RAF Secured Claim and the NextMed Secured Claim, in full settlement and satisfaction of the RAF Secured Claim and the NextMed Secured Claim, provided, however, that the unpaid portions of such claims shall be deemed to be general unsecured deficiency claims. Additionally, the Debtor will distribute to RAF and NextMed pursuant to and as set forth in the Plan, cash collateral in the Debtor's possession in the amount of $36,107 on a pro rata basis.

~~At this time, the Debtor does not have a purchaser of the Equipment and has determined to explore an alternative process for monetizing the Equipment in an effort to obtain the benefit of the Carve-Out the Debtor negotiated with Mr. Pierce, RAF and NextMed. The Debtor has further met and conferred with Mr. Pierce, NextMed and RAF with respect to the sale of the Equipment and they have agreed to an alternative option regarding the sale of the Equipment using the services of one of the Debtor's board members—David~~

Behzadi to conduct a reach out and sale process for the Equipment. The Debtor is preparing a stipulation in that regard and the Debtor will seek Court approval of such stipulation.

On March 3, 2026, the Court entered an order approving the Amended Carve-Out Stipulation, subject to certain conditions to the payment of the Success Fee and Travel Expense Reimbursement as set forth in that order. The Alternative Sale Process is underway and to date the Debtor has generated approximately $149,000 (and is hopeful it will be able to generate an additional $25,000 before April 30, 2026).

**9.    The Debtor's Second Cash Collateral Motion**

On January 14, 2026, the Debtor filed that certain *Debtor's Motion For Entry Of An Order: (I) Authorizing The Debtor To Use Cash Collateral And Sale Proceeds To Pay Administrative Expenses; (II) Granting Adequate Protection; And (III) Granting Related Relief* (the "Cash Collateral Motion") requesting to use the Available Intangible IP Cash to pay certain post-petition expenses, as set forth in the Cash Collateral Motion. A hearing on thatthe Cash Collateral Motion is scheduledwas held on February 4, 2026. It is anticipated that if the Court grants that Motion and the expenses requested to be, and on February 6, 2026, the Court entered an order granting the Cash Collateral Motion subject to the terms of that certain *Stipulation Between Debtor And U.S. Trustee Resolving U.S. Trustee's Opposition To Debtor's Motion For Entry Of An Order: (I) Authorizing The Debtor To Use Cash Collateral And Sale Proceeds To Pay Administrative Expenses; (II) Granting Adequate Protection; And (III) Granting Related Relief* (Doc 253). Based on expenditures approved by the Court that have been paid are paidto date, the total amount of Available Intangible IP Cash as of March 1, 2026 will bethe date of the filing of this Disclosure Statement is approximately $1,222,548.771,321,009.53.[1]

At this time, not including any proceeds of the Debtor's sale of assets, the amount of remaining other cash the Debtor has available is $36,107 (the "Remaining Cash Collateral").

---

[1] The Debtor is also holding: (1) Tangible Intellectual Property Sale Proceeds in the amount of $100,000; (2) Moov Equipment Proceeds in the amount of $30,000; (3) Remaining Cash Collateral in the amount of $36,107; and (4) proceeds from the sale of Equipment pursuant to the Alternative Sale Process in the amount of approximately $149,000.

16

The Debtor is in the process of preparing and filing a third motion for the use of cash collateral in order to be able to pay certain expenses for the period from March 1, 2026, through July 31, 2026 (by which time it is the Debtor's goal to have confirmed its Plan and for the Plan to have gone effective).  The Debtor anticipates that its total cash on hand as of July 31, 2026, will be approximately $1,369,345.

**10.    The Debtor's Claim Resolution/Lien Avoidance Stipulation with the San Diego County Treasurer-Tax Collector**

On December 15, 2025, the Debtor and the San Diego Treasurer-Tax Collector (the "Tax Collector") entered into that certain *Stipulation Between Debtor And San Diego Treasurer-Tax Collector Regarding Proof Of Claim No. 4 and Proof of Claim No. 56* (the "Tax Collector Stipulation") (Doc 212), which the Court has approved, pursuant to which the parties agreed that Proof of Claim No. 4 and Proof of Claim No. 56 (which amends and supersedes Proof of Claim No. 4) shall be treated as general unsecured claims for all purposes and the alleged liens securing Proof of Claim No. 4 and Proof of Claim No. 56 shall be deemed to have been avoided pursuant to section 545 of the Bankruptcy Code.

**11.    The Debtor's Motion To Reject Non-Residential Real Property Lease And Abandon Unsold Personal Property**

On November 26, 2025, the Debtor filed that certain *Debtor's Motion For Entry Of An Order: (1) Authorizing Rejection Of Nonresidential Real Property Lease; And (2) Abandonment Of Personal Property Located At The Rejected Lease Location That Is Not Sold* (the "Rejection/Abandonment Motion") (Doc 199).  RIF III – Yarrow Drive II, LLC (the "Landlord") has opposed the Rejection/Abandonment Motion with respect to the Debtor's request for authority to abandon unsold property.  A continued hearing on that motion is scheduled for January 21, 2026, and the Debtor is attempting to resolve the Landlord's opposition to the Rejection/Abandonment Motion.  The ultimate outcome of the Debtor's efforts to sell the Equipment will impact the resolution of the Rejection/Abandonment Motion.  Moreover, irrespective of the outcome of that

17

~~dispute, unless the Debtor and the Landlord agree in writing to extend the deadline to assume the lease at issue, the lease will be deemed rejected as of January 20, 2026.~~

On February 19, 2026, the Debtor filed that certain *Stipulation Between Debtor And RIF III – Yarrow Drive II, LLC Regarding Debtor's Motion For Entry Of An Order: (1) Authorizing Rejection Of Nonresidential Real Property Lease; And (2) Abandonment Of Personal Property Located At The Rejected Lease Location That Is Not Sold* (the "Landlord Stipulation") (Doc 268) resolving the Landlord's opposition to the Rejection/Abandonment Motion.  On March 16, 2026, the Court entered an order approving the Landlord Stipulation.

**12.    The Debtor's Compliance with Administrative Requirements**

The Debtor has complied with all of the reporting requirements of the United States Trustee ("UST"), including the preparation and filing of its 7-Day Package with the UST, its Schedules of Assets and Liabilities (and amendments) and Statements of Affairs, and Monthly Operating Reports, and have paid their quarterly fees owing to the UST.  The Debtor timely filed status reports in accordance with the orders of the Court and attended the status conference hearings. The Debtor also attended its Initial Debtor Interview with the UST and its Meeting of Creditors.

**13.    Claims Bar Date**

The Court established October 16, 2025, as the bar date for filing proofs of claim for all creditors except for governmental units, and December 21, 2025, for governmental units.

**14.    Status Of Litigation and Prospective Litigation Involving The Debtor**

One of the most significant litigation matters involving the Debtor arises from disputes with its former Chairman and Chief Executive Officer, Dr. Hussein S. El-Ghoroury.  Prior to the Petition Date, Dr. El-Ghoroury commenced an action against the Debtor in the San Diego Superior Court entitled *El-Ghoroury v. Ostendo Technologies, Inc.*, Case No. 24CU011536N (the "El-Ghoroury Action").  In that action, Dr. El-Ghoroury asserts claims against the Debtor for alleged unpaid compensation, indemnification, and declaratory relief arising from the termination of his employment in September 2024, as well as derivative shareholder claims.

The Debtor has denied liability and has asserted defenses to such claims. In addition, the

18

Debtor has filed a cross-complaint against Dr. El-Ghoroury asserting claims for, among other things, breach of fiduciary duty, fraud, breach of contract, negligence, and related misconduct. The El-Ghoroury Action is currently subject to the automatic stay under section 362 of the Bankruptcy Code. To the extent Dr. El-Ghoroury asserts claims against the Debtor, such claims must be resolved through the claims-allowance process in this Chapter 11 case unless the Bankruptcy Court orders otherwise.

Based upon investigations conducted by the Debtor, the Debtor believes that Dr. El-Ghoroury and certain affiliates and third parties may have engaged in misconduct prior to the Petition Date, including, without limitation: (i) breaches of fiduciary duties owed to the Debtor; (ii) diversion or misuse of corporate assets; (iii) unauthorized attempts to transfer or license intellectual property; (iv) failure to protect or maintain valuable intellectual property; and (v) misappropriation or unauthorized use of the Debtor's intellectual property and confidential information. Certain of these claims constitute derivative or generalized claims that are property of the bankruptcy estate under section 541 of the Bankruptcy Code and may only be prosecuted by the Debtor or an authorized estate representative.

The Debtor and the purchaser of substantially all of the Debtor's intellectual property assets have identified potential unauthorized use of the Debtor's intellectual property by third parties, including parties who may have relied upon purported authority of Dr. El-Ghoroury or persons acting in concert with him. Some such activity may have occurred prior to the Petition Date and may be continuing. Investigations into these matters are ongoing and may give rise to claims for damages, injunctive relief, accounting, avoidance of unauthorized transfers, or other remedies.

Pursuant to the Plan and consistent with the Bankruptcy Court approved Asset Purchase Agreement with Rowen, ~~all~~subject to the terms of the Asset Purchase Agreement, various litigation claims and causes of action of the estate, including claims against Dr. El-Ghoroury and others for breach of fiduciary duty, fraud, and misappropriation of assets (the "Retained Litigation Claims"), were not sold and remain property of the estate. On the Effective Date, such Retained Litigation Claims will vest in the Liquidating Trust. The Liquidating Trust will be authorized to

investigate, prosecute, settle, or otherwise resolve such claims, including through examinations under Bankruptcy Rule 2004 and settlements pursuant to Bankruptcy Rule 9019.  There can be no assurance regarding the outcome, cost, or timing of any such litigation, or whether any recoveries will be realized for the benefit of creditors.

### III.   PLAN SUMMARY

The Plan is a liquidating Plan.  On the Effective Date, the Debtor shall create and enter into a liquidating trust (the "Liquidating Trust") for the benefit of creditors, as set forth in the Plan and as described below.  The Liquidating Trust shall be a creditors' liquidating trust for all purposes, including Treasury Regulations Section 301.7701-4(d), and is intended to be treated as a grantor trust for federal income tax purposes.  The Liquidating Trust will be organized for the purpose of collecting, distributing, liquidating and otherwise disposing of all of the funds, property, claims, rights and causes of action of the Debtor and its estate which is assigned to the Liquidating Trust pursuant to, and in accordance with, the Plan.  The primary purpose of the Liquidating Trust under the Plan will be to investigate, prosecute and/or resolve, if appropriate, any claims and causes of action of the estate against third parties that are not resolved as of the Effective Date.  After the Liquidating Trust has been created and has taken ownership/assignment of all funds, property, claims, rights and causes of action of the Debtor and its estate, the Debtor shall dissolve or otherwise wind down pursuant to applicable law, and shall not conduct any further business and/or other activities.

The Debtor anticipates that available cash as of the Effective Date will be comprised of the following:

-Remaining Cash Collateral: $36,107

-Available Intangible IP Cash: Approximately $~~1,200,000~~[1]968,000[2]

[1] ~~As set forth above, as of the date of the filing of this Disclosure Statement, Available Intangible IP Cash equals approximately $1,825,973.77.  It is anticipated that if the Court grants the Debtor's second cash collateral motion and the expenses requested to be paid are paid, the total amount of Available Intangible IP Cash as of March 1, 2026 will be approximately $1,222,548.77.~~

[2] As set forth above, as of the date of the filing of this Disclosure Statement, Available Intangible IP Cash equals approximately $1,321,009.53.  It is anticipated that if the Court grants the Debtor's third cash collateral motion and the expenses requested to be paid are paid, the total amount of

-Potential Tangible Personal Property Sale Proceeds: $~~100,000~~249,000 comprised of the Tangible Intellectual Property Sale Proceeds, plus ~~any~~ proceeds from the sale of the Equipment (not including the Moov Equipment)

-Moov Equipment Proceeds: $30,000 ($10,000 of which is the Moov Carve-Out)

**Total Projected Cash: $~~1,366,107~~1,283,107**

Classes 1 - 6 under the Plan consist of claims secured by liens and security interests against certain of the Debtor's assets. The treatment of claims within such classes depends upon the circumstances of each such claim, including whether the claim is oversecured or undersecured, or whether the Debtor/Liquidating Trust and the creditor have entered into a settlement agreement governing the treatment of such creditor's secured claims.

Class 7 under the Plan consists of all priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7). A number of proofs of claim have been filed by former employees of the Debtor asserting priority treatment for some or all of their respective alleged claims against the Debtor. The total amount of such priority claims asserted against the Debtor equals $~~955,774.01~~972,924.01, but this is as a result of certain of such claimants not taking into account the statutory cap on priority wage claims, as set forth in section 507(a)(4) of the Bankruptcy Code. Taking into account the statutory cap, the total amount of *asserted* priority wage claims is estimated to be $~~260,450.00~~277,600.00. The Debtor is evaluating whether and to what extent such claimants are entitled to priority treatment at all and reserves its rights to object to such claims with respect to amounts and priorities. Attached hereto as **Exhibit A** is a list of all such asserted priority wage claims. To the extent any such claims are allowed as priority claims, they shall be paid in full, in cash, on the later of the Effective Date and the date such claims are deemed allowed by the Bankruptcy Court.

Class 8 under the Plan consists of all non-priority general unsecured claims. The total amount of claims in class 8 will depend upon a number of factors, including whether any creditors holding claims in classes 1 - 6 have claims that are not satisfied in full pursuant to a liquidation

---

Available Intangible IP Cash as of July 31, 2026 will be approximately $968,000.

of such creditors' collateral, and the extent of allowed class 7 claims.  Class 8 will receive a pro rata share of any unencumbered cash remaining in the Liquidating Trust after the payment in full of all allowed administrative claims (including all post-Effective Date fees and costs, including without limitation, the fees and costs of the Liquidating Trust), and all allowed priority claims.

Class 9 under the Plan consists of equity interests in the Debtor.  It is not anticipated that there will be any unencumbered funds available to make any distribution to equity interest holders.  To the extent any funds remain after the payment of all allowed claims, including allowed administrative claims, post-confirmation and post-Effective Date fees and expenses of the Liquidating Trust, they shall be distributed to equity interest holders in accordance with the Debtor's corporate governance documents, less any fees and costs of making such distributions.  Class 9 is unimpaired and is deemed to have accepted the Plan.

After taking into account the treatment of holders of secured claims in classes 1 – 6, the Debtor anticipates that it will have the following approximate unencumbered cash available for the payment of pre-Effective Date allowed administrative claims, priority claims, and general unsecured claims:

Available Intangible IP Cash: $~~1,000,000~~[2]748,000[3]

Moov Carve-Out: $10,000

Carve-Out from sale of Equipment: ~~Potentially up to~~ $100,000

**Total: $~~1,010,000 - $1,110,000~~858,000**

---

[2] ~~As set forth above, as of the date of the filing of this Disclosure Statement, Available Intangible IP Cash equals approximately $1,825,973.77.  It is anticipated that if the Court grants the Debtor's second cash collateral motion and the expenses requested to be paid are paid, the total amount of Available Intangible IP Cash as of March 1, 2026 will be approximately $1,222,548.77.  After taking into account the allowed class 1 and class 2 secured claims (totaling approximately $219,339.78, not including accrued interest), Available Intangible IP Cash is estimated to equal approximately $1,000,000.~~

[3] It is anticipated that the total amount of Available Intangible IP Cash as of July 31, 2026, will be approximately $968,000.  After taking into account the allowed class 1 and class 2 secured claims (totaling approximately $219,339.78, not including accrued interest), Available Intangible IP Cash is estimated to equal approximately $748,000.

Projected pre-Effective Date allowed administrative claims: $~~500,000~~430,000 - $~~600,000~~455,000

Projected allowed priority wage claims: $0.00 - $~~260,450.00~~277,600.00

Projected allowed priority tax claims: $0.00 - $27,163.78

Estimated Cash available for Liquidating Trust/General Unsecured Creditors: $~~122,386.22~~98,236.22 - $~~610,000~~428,000

## IV. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**A.      What Creditors and Interest Holders Will Receive Under the Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

**B.      Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Debtor has <u>not</u> placed the following claims in a class:

**1.   Administrative Expenses**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Bankruptcy Code Section 507(a)(2).  The Bankruptcy Code requires that all administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(2) administrative claims and their treatment under the Plan:

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the Effective Date |
| Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG"), bankruptcy counsel to the Debtor | $250,000 (est.), which would be in addition to any post-petition fees and expenses paid to LNBYG by the Debtor | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| Sherwood Partners, Inc. ("Sherwood"), financial advisor to the Debtor | $150,000 (est.), which would be in addition to any post-petition fees and expenses paid to Sherwood by the Debtor | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| Mincin Law, PLLC, counsel to the Official Committee of Unsecured Creditors | $30,000 (est.), which would be in addition to any post-petition fees and expenses paid to Mincin Law, PLLC by the Debtor | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| Post-Petition Non-Professional Fee Administrative Claims | $~~70,000~~0 - $~~170,000 (approx.) of post-petition accounts payable accrued in the ordinary course of the Debtor's business, depending on whether and to what extent the Debtor will be required to pay for clean-up costs and the removal of any chemicals from the Debtor's facility in Carlsbad, California.~~25,000 (to the extent not otherwise included in the Debtor's cash collateral budgets) | Paid in full in the ordinary course of business or following the entry of an order of the Bankruptcy Court if a dispute exists between the Debtor/Liquidating Trust and the administrative claim holder |
| **TOTAL** | $~~500,000~~430,000 - $~~600,000~~455,000 | Paid in the manner described above |

Bankruptcy Court Approval of Fees Required:

The Bankruptcy Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses, the professional in question must file and serve a properly noticed fee application and the Bankruptcy Court must rule on the application. Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under the Plan. The administrative claim amounts set forth above simply represent the Debtor's best estimate as to the amount of allowed administrative claims in this case. The actual administrative claims may be higher or lower. Much of whether the actual administrative claims described above for professionals will be higher will be dependent upon whether the Debtor is required to engage in any substantial litigation regarding the confirmation of the Plan and/or objecting to claims. To the extent the Debtor is required to engage in any such substantial litigation, the Debtor's professionals are likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above. By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. Similarly, professionals who have been employed in this case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the preparation of this Disclosure Statement.

**2. Priority Tax Claims**

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Effective Date, equal to the allowed amount of such allowed tax claims over a period ending not later than five years after the Petition Date. All allowed Section 507(a)(8) priority tax claims will be paid the full amount of such claims within

25

ten (10) business days of the Effective Date.  The following priority tax claims have been filed

in this case, and the Debtor reserves the right to object to the allowance of such claims:

| Claimant | Claim No. | Asserted Priority Claim Amount | Notes |
|---|---|---|---|
| San Diego County Treasurer-Tax Collector | 5-1 | $67.11 | N/A |
| Internal Revenue Service | 19-2 | $400.00 | Estimated Claim |
| Franchise Tax Board | 30 | $1,709.69 | |
| California Dept. of Tax and Fee Administration | 57 | $24,986.98 | |
| **TOTAL** | | **$27,163.78** | |

27

**C.      Classified Claims and Interests**

**1.   Class of Secured Claims**

Secured claims are claims secured by liens on property of the estate.  The following chart sets forth the description and treatment of the Debtor's secured claims:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 1 | The secured claim of the United States Small Business Administration ("SBA").<br><br>Loan No. ending in 7807, dated June 3, 2020, in the amount of $150,000.00<br><br>Asserted claim amount: $147,601.78 (Proof of Claim No. 32-1)<br><br>Lien position/collateral: First lien position/All tangible and intangible personal property of the Debtor | Impaired; allowed claims in this class are entitled to vote on the Plan. | Within ten (10) business days of the Effective Date of the Plan, the SBA shall receive a payment from the Available Intangible IP Cash in the amount ~~of $147,601.78 plus any accrued interest~~equal to the remaining amount of the SBA's allowed class 1 claim (with interest calculated in accordance with the SBA loan documents) in full settlement and satisfaction of the SBA's allowed class 1 claim. |

29

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 2 | The secured claim of Rowen Innovations, LLC ("Rowen")<br><br>Scheduled Claim Amount: $71,738 (Schedule D of the Debtor's Schedules of Assets and Liabilities)<br><br>Lien position/collateral: Second lien position on intangible assets and last position on tangible assets | Impaired; allowed claims in this class are entitled to vote on the Plan. | Within ten (10) business days of the Effective Date of the Plan, Rowen shall receive a payment from the Available Intangible IP Cash in the amount of $71,738, plus accrued interest (with interest calculated in accordance with the Rowen loan documents) in full settlement and satisfaction of Rowen's allowed class 2 claim. |

31

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 3 | The secured claim of John Douglas Pierce ("Mr. Pierce")<br><br>Asserted claim amount: $290,532.00, of which $105,000 is asserted as a secured claim (Proof of Claim No. 47-1)<br><br>Lien position/collateral: Second lien position on only tangible assets and proceeds thereof | Impaired; allowed claim in this class is entitled to vote on the Plan. | Mr. Pierce's class 3 claim is comprised of the portion of Proof of Claim No. 47-1 that is asserted as a secured claim, in the amount of $105,000 (the "Pierce Secured Claim"). The Debtor and Mr. Pierce, among other parties, entered into that certain *Amended Stipulation Between Debtor, John Douglas Pierce, RAF Pacifica Group-Real Estate Fund II, LLC and NextMed III Owner, LLC Regarding Carve-Out Of Proceeds Of Sale Of Tangible Personal Property* (the "Amended Carve-Out Stipulation") (Doc ~~215~~253), pursuant to which Mr. Pierce and the Debtor agreed to the treatment of the Pierce Secured Claim as set forth in the Amended Carve-Out Stipulation, which provides that Mr. Pierce will receive $105,000 in full settlement and satisfaction of the Pierce Secured Claim, with Mr. Pierce waiving any right to accrued or additional interest, fees or costs on account of the Pierce Secured Claim, provided, however, that nothing set forth in the Amended Carve-Out Stipulation or the Plan shall reduce the general unsecured claim of Mr. Pierce. Pursuant to the Amended Carve-Out Stipulation, the source of payment for the Pierce Secured Claim shall be the "Secured Potential Tangible Personal Property Sale Proceeds" (as defined in the Amended Carve-Out Stipulation and described in this Disclosure Statement). As and to the extent the Secured Potential Tangible Personal Property Sale Proceeds are not sufficient to pay $105,000 to Mr. Pierce, the Debtor will fund the shortfall using the Debtor's Remaining Cash |

33

| | | | Collateral (defined above).    The general unsecured claims of Mr. Pierce are classified in class 8 of the Plan.<br><br>The Debtor will pay the Pierce Secured Claim as set forth above within ten (10) business days of the Effective Date. |
|---|---|---|---|

34

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 4 | The secured claim of RAF Pacifica Group-Real Estate Fund II, LLC ("RAF")<br><br>Asserted claim amount: $613,711.87 (the "RAF Secured Claim")<br><br>(Proof of Claim No. 48-1)<br><br>Lien position/collateral: Third or Fourth lien position on all property subject to enforcement of a money judgment against the Debtor to which a judgment lien on property may attach under section 697.530 of the California Code of Civil Procedure, which does not include any intangible intellectual property or the proceeds thereof) | Impaired; allowed claim in this class is entitled to vote on the Plan. | The Debtor and RAF, among other parties, entered into the Amended Carve-Out Stipulation pursuant to which RAF and the Debtor agreed to the treatment of the RAF Secured Claim as set forth in the Amended Carve-Out Stipulation, which provides that RAF will receive a pro rata distribution (pro rated as between RAF and the holder of the class 5 claim described below) of the remaining Secured Potential Tangible Personal Property Sale Proceeds as set forth in the Amended Carve-Out Stipulation.<br><br>RAF will also receive a pro rata distribution of any Remaining Cash Collateral (subject to any payments from the Remaining Cash Collateral required to be paid to Mr. Pierce on account of his class 3 claim) (pro rated as between RAF and the holder of the class 5 claim described below).<br><br>Any unpaid portion of the RAF Secured Claim shall be deemed to be a general unsecured deficiency claim and is classified as a class 8 claim under the Plan.<br><br>The Debtor will make the pro rated distribution as set forth above to RAF within ten (10) business days of the Effective Date. |

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | The secured claim of NextMed III Owner, LLC ("NextMed")<br><br>Asserted claim amount: $648,242.30 (the "NextMed Secured Claim")<br><br>(Proof of Claim No. 52-1)<br><br>Lien position/collateral: Third or Fourth lien position on all of the Debtor's cash, inventory, equipment and all accounts and in all proceeds of the foregoing assets (but not intangible intellectual property or the proceeds thereof) | Impaired; allowed claim in this class is entitled to vote on the Plan. | The Debtor and NextMed, among other parties, entered into the Amended Carve-Out Stipulation pursuant to which NextMed and the Debtor agreed to the treatment of the NextMed Secured Claim as set forth in the Amended Carve-Out Stipulation, which provides that NextMed will receive a pro rata distribution (pro rated as between NextMed and the holder of the class 4 claim described above) of the remaining Secured Potential Tangible Personal Property Sale Proceeds as set forth in the Amended Carve-Out Stipulation.<br><br>NextMed will also receive a pro rata distribution of any Remaining Cash Collateral (subject to any payments from the Remaining Cash Collateral required to Mr. Pierce on account of his class 3 claim) (pro rated as between NextMed and the holder of the class 4 claim described above).<br><br>Any unpaid portion of the NextMed Secured Claim shall be deemed to be a general unsecured deficiency claim and is classified as a class 8 claim under the Plan.<br><br>The Debtor will make the pro rated distribution as set forth above to NextMed within ten (10) business days of the Effective Date. |

38

| **CLASS #** | **DESCRIPTION** | **IMPAIRED (Y/N)** | **TREATMENT** |
|---|---|---|---|
| 6 | The secured claim IPFS Corporation ("IPFS")<br><br>Asserted claim amount: $2,083.60<br><br>(Proof of Claim No. 39-1)<br><br>Collateral: IPFS asserts that its claim is secured by "unearned premium of financed insurance policy." | Not impaired; allowed claim in this class is not entitled to vote on the Plan. | On the Effective Date, any remaining premium required to be paid, up to the amount of the asserted claim amount of $2,083.60, shall be paid in full settlement and satisfaction of IPFS's class 6 claim. |

40

Additionally, the following parties have recorded UCC-1 financing statements which remain active but where the Debtor believes the underlying obligations being secured by such liens have been satisfied:

    a.  BBT Commercial Equipment Capital Corp. – The Debtor's books and records show a balance of $0.00 owed.

    b.  Crestmark Equipment Finance, Inc. – The Debtor's books and records show a balance of $835 owed, after last payment of $4,175 was made in June 2018. The Debtor believes that this obligation has been satisfied though there remains an active recorded UCC-1 financing statement of record.

    c.  Brevet Direct Lending (referred to in the UCC-1 Financing search as "LLC") – The Debtor's books and records show a balance of $0.00 owed. Brevet Direct Lending financed the Debtor's employee retention credits in the amount of $1,033,142.93 in July 2022, and received a payment from the Debtor in the amount of $1,192.088 in February 2023 in satisfaction of such debt.

Such alleged liens/claims are not classified under the Plan because the Debtor does not believe that such liens/claims exist. On the Effective Date, such liens and claims shall be deemed to be extinguished and of no further force or effect.

### 2. Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receives cash on the Effective Date equal to the allowed amount of such claim.

41

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 7 | Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7). A number of proofs of claim have been filed by former employees of the Debtor asserting priority treatment for some or all of their respective alleged claims against the Debtor. The total amount of such priority claims asserted against the Debtor equals $955,774.01972,924.01, but this is as a result of certain of such claimants not taking into account the statutory cap on priority wage claims, as set forth in section 507(a)(4) of the Bankruptcy Code. Taking into account the statutory cap, the total amount of asserted priority wage claims is estimated to be $260,450.00277,600.00. The Debtor is evaluating whether and to what extent such claimants are entitled to priority treatment at all, and reserves its rights to object to such claims with respect to amounts and priorities. Attached hereto as | Not impaired; allowed claims in this class are not entitled to vote on the Plan. | To the extent any such claims are allowed, they shall be paid in full, in cash, on the later of the Effective Date and the date such claims are deemed allowed by the Bankruptcy Court. |

42

| | **Exhibit A** is a list of all such asserted priority wage claims. | | |
|---|---|---|---|

### 3.  Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a).  The following chart identifies the Plan's treatment of the classes containing the Debtor's non-priority general unsecured claims:

44

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 8 | All non-priority general unsecured claims.<br><br>The Debtor scheduled a total of $17,722,362.43 of general unsecured debt as set forth on Schedule F of the Debtor's Schedules of Assets and Liabilities, but based on claims filed against the estate, it is possible that the total amount of allowed general unsecured claims against the estate exceeds $30,000,000.<br><br>However, the actual total amount of class 8 claims will depend upon a number of factors, including whether any creditors holding claims in classes 1 - 6 have claims that are not satisfied in full pursuant to a liquidation of such creditors' collateral, and whether any creditors asserting class 7 priority claims are reclassified as class 8 claimants.<br><br>If the total allowed amount of general unsecured claims is ultimately more than what the Debtor | Impaired; allowed claims in this class are entitled to vote on the Plan. | In full settlement and satisfaction of allowed class 8 claims, each holder of an allowed class 8 claim will receive a pro rata share of the unencumbered cash remaining in the Liquidating Trust after the payment of all allowed administrative claims (including post-Effective Date administrative claims and fees and expenses, including the fees and costs of the Liquidating Trust), and all allowed priority claims.<br><br>To the extent funds are available, the Liquidating Trustee will make distributions to holders of allowed class 8 claims on account of such claims at least annually, up to the allowed amount of such class 8 claims.<br><br>The Debtor estimates that the cash available for the Liquidating Trust/class 8 after taking into account allowed pre-Effective Date administrative claims, and allowed priority claims will be in the range of $~~122,386.22~~98,236.22 - $~~610,000~~428,000, depending upon whether asserted priority claims are allowed as asserted, subject to applicable statutory caps~~, and depending upon whether the Debtor will be required to incur additional clean-up and other costs related to the removal of chemicals from the Debtor's facility in Carlsbad, California~~.<br><br>The ultimate amount distributed to holders of allowed class 8 claims will depend upon a number of factors, including whether and to |

| | |
|---|---|
| scheduled, they may significantly increase the total amount of allowed class 8 claims, and therefore significantly affect the percentage recovery received by holders of allowed class 8 claims.<br><br>At this time the Debtor cannot estimate the range of recovery for holders of allowed class 8 claims.<br><br>The assets available for recovery for general unsecured creditors, subject to paying in full all allowed administrative claims (including all post-Effective Date fees and costs, including without limitation, the fees and costs of the Liquidating Trust) and priority claims, consist primarily of: (i) any Remaining Intangible IP Cash, the Carve-Out (if any), and the Moov Carve-Out (if any), after the payment of all allowed administrative claims (including the fees and expenses of the Liquidating Trust), and class 1 – 7 claims as set forth above, and (ii) any proceeds/recoveries from claims and causes of action of the estate after the | what extent the Liquidating Trust determines to use available funds (subject to the cap described hereinbelow) to pursue claims and causes of action against the estate, and whether and to what extent the Liquidating Trust recovers money in connection with claims and causes of action against the estate. The percentage recovery for holders of allowed class 8 claims will depend on such factors as well as the ultimate total amount of allowed class 8 claims. |

46

| | payment of all allowed administrative claims (including the fees and expenses of the Liquidating Trust), and class 1 – 7 claims as set forth above.<br><br>Much of the actual recovery for holders of allowed class 8 claims will depend upon the Debtor's or the Liquidating Trustee's ability to liquidate non-cash assets (if any).<br><br>A detailed claims chart showing all claims (including class 8 claims) which were scheduled by the Debtor and all general unsecured proofs of claim which have been filed against the Debtor is attached hereto as **Exhibit B** (the "Claims Chart"). | | |
|---|---|---|---|

### 4. Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. Equity interests in the Debtor are classified as class 9 interests and will remain intact and holders of equity interests shall be deemed to have voted to accept the Plan and are not entitled to vote on the Plan. It is not anticipated that there will be any unencumbered funds available to make any distribution to equity interest holders. To the extent any funds remain after the payment of all allowed claims, including allowed administrative claims, post-confirmation and post-Effective Date fees and expenses of the Liquidating Trust, they shall be distributed to equity interest holders in accordance with the Debtor's corporate governance documents, less any fees and costs of making such distributions. Class 9 is unimpaired and is deemed to have accepted the Plan.

## V. MEANS OF EFFECTUATING THE PLAN AND IMPLEMENTATION OF THE PLAN

### A. The Liquidating Trust

1. **Execution of Liquidating Trust Agreement.** On the Effective Date, a Liquidating Trust Agreement in a form approved by the Bankruptcy Court at the Plan Confirmation Hearing shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein, which shall be for the benefit of all creditors entitled to receive distributions under the Plan from the Liquidating Trust. The treatment of all claim holders will occur in the manner described above. All cash distributions to be made on or near the Effective Date will be funded from the Cash Collateral, the Remaining Intangible IP Cash, the Carve-Out (if any), the Moov Carve-Out, and the Potential Tangible Personal Property Sale Proceeds, all as provided in the Plan, either by the Debtor, or, if the Liquidating Trust has been established, by the Liquidating Trust.

2. **Purpose of the Liquidating Trust.** The Liquidating Trust shall be established and maintained for the purpose set forth in the Liquidating Trust Agreement, including for the purpose of collecting, distributing and liquidating all of the funds and property assigned to the Liquidating

48

Trust and pursuing claims and causes of action assigned to the Liquidating Trust under the Plan for the benefit of the creditors entitled to receive distributions under the Plan from the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan. The Liquidating Trust shall have no objective or authority to continue or to engage in the conduct of any trade or business.

       **3.**      **Transfer of Property to the Liquidating Trust.**

       a.      On the Effective Date, all right, title and interest of the Debtor and the bankruptcy estate in property and assets of any kind, to the extent such property hasn't previously been sold (the "Trust Property") shall be, and shall be deemed to be, irrevocably transferred, absolutely assigned, conveyed, set over and delivered to the Liquidating Trust, in trust to and in trust for the benefit of the beneficiaries of the Liquidating Trust for the uses and purposes stated herein and in the Liquidating Trust Agreement, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible under Section 1141(c) of the Bankruptcy Code, except as set forth in the Plan Confirmation Order or the Plan. To the extent that certain assets of the Debtor's or the Debtor's bankruptcy estate (and their right, title and interest in such assets), because of their nature or because they will accrue subsequent to the Effective Date, cannot be irrevocably transferred, absolutely assigned, conveyed, set over or delivered to the Liquidating Trust on the Effective Date, such assets shall be deemed assigned, set over, transferred and conveyed to the Liquidating Trust as soon as practical after the Effective Date. The Liquidating Trustee is hereby granted the Power of Attorney to execute documents on behalf of the Debtor, as reasonably determined by the Liquidating Trustee (in recordable form where necessary or appropriate) to vest or perfect in or confirm to the Liquidating Trustee title to and possession of

the Trust Property.

b.    On or after the Effective Date, the Liquidating Trustee shall continue as a plaintiff in all litigation or causes of action (on behalf of beneficiaries of the Liquidating Trust) in which the Debtor was plaintiff prior to the Effective Date.  All recoveries and proceeds arising from litigation and causes of action shall be deemed assigned, set over, transferred and conveyed to the Liquidating Trust upon receipt thereof.  All fees and costs of the Liquidating Trust (and agents thereof) arising from or relating to pursuing litigation or causes of action or other services performed at the request of the Liquidating Trustee on behalf of the Liquidating Trust shall be paid as a first priority in right of distribution from the Liquidating Trust, subject to a cap of $75,000, provided, however, that the Liquidating Trustee may request from the Bankruptcy Court upon a showing of cause an increase in such cap.

c.    The transfer of assets of the estate to the Liquidating Trust shall be made for the benefit of the beneficiaries of the Liquidating Trust, but only to the extent the beneficiaries are entitled to distributions under the Plan.

d.    For all federal, state and local income tax purposes, the Debtor, the beneficiaries of the Liquidating Trust, and the Liquidating Trustee shall treat the transfer of the Trust Property to the Liquidating Trust as a transfer of the Trust Property by the Debtor to the beneficiaries of the Liquidating Trust in satisfaction of their class 8 claims under the Plan, followed by a transfer of the Trust Property by the beneficiaries of the Liquidating Trust to the Liquidating Trust in exchange for their beneficial interests in the Liquidating Trust.  Thus, the beneficiaries of the Liquidating Trust shall be treated as the grantors and owners of the Liquidating Trust.

**4.    Securities Exempt.**  Under Section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Liquidating Trust to the beneficiaries of the Liquidating Trust under the Plan, to the extent such interests are deemed to be "securities," shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.  If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of

the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

5.    **Governance of Liquidating Trust.**  The Liquidating Trust shall be governed by the Liquidating Trustee in accordance with the Liquidating Trust Agreement and consistent with the Plan.  A proposed form of Liquidating Trust Agreement ~~will be filed with the Court prior to the hearing for the Court to consider approval of the Disclosure Statement~~is attached hereto as **Exhibit C**.

6.    **Designation of Liquidating Trustee.**  The Debtor is in the process of identifying a Liquidating Trustee ~~shall be identified at least fourteen (14) days prior to the Plan Confirmation Hearing.~~and believes it will be able to identify at least one potential candidate by the time of the hearing on this Disclosure Statement.  The designation of the Liquidating Trustee shall be effective on the Effective Date without the need for a further order of the Bankruptcy Court.  The duties, obligations, and responsibilities of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement and shall include, but not be limited to, the following: (a) oversee the preservation, holding, management and maximization of all Trust Property and distribute them to the beneficiaries of the Liquidating Trust; (b) take or not take those actions that the Liquidating Trustee in his business discretion believes to be in accordance with the best interests of the beneficiaries of the Liquidating Trust and which actions or inactions are consistent with the Plan. The Liquidating Trustee's responsibilities, duties and obligations are solely to the beneficiaries of the Liquidating Trust.  The Liquidating Trustee shall have an independent right and standing to request relief from the Bankruptcy Court that the Liquidating Trustee believes to be in accordance with the best interests of the beneficiaries of the Liquidating Trust. The Liquidating Trustee shall be deemed to be a "party in interest" within the meaning of Section 1109(b) of the Bankruptcy Code and a representative of the Debtor's bankruptcy estate under Bankruptcy Code section 1123(b)(3) and 1129(a)(5).

7.    **Rights, Powers and Privileges of the Liquidating Trustee.**  The Liquidating

Trustee shall have all of the rights, powers and privileges expressly provided in the Liquidating Trust Agreement and the Plan.  The Liquidating Trustee shall have the power to take the actions granted in the Liquidating Trust Agreement and any powers reasonably incidental thereto, that the Liquidating Trustee, in his reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Liquidating Trust, unless otherwise specifically limited or restricted by the Plan or the Liquidating Trust Agreement.

8.    **Agents and Professionals.**  The Liquidating Trustee shall consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Liquidating Trustee to have qualifications necessary to assist in the proper administration of the Liquidating Trust.  The Liquidating Trustee may pay the reasonable salaries, fees and expenses of such persons (including himself), including contingency fees, out of the Trust Property in the ordinary course.

9.    **Investment and Safekeeping of Trust Property.**  All monies and other Trust Property received by the Liquidating Trustee shall, until distributed or paid over as provided in the Liquidating Trust Agreement and the Plan, be held in the Liquidating Trust for the benefit of the beneficiaries of the Liquidating Trust, but need not be segregated from other Trust Property, unless and to the extent required by law or the Plan.  The Liquidating Trustee shall be under no liability for interest or producing income on any moneys received by the Liquidating Trust and held for distribution or payment to the beneficiaries of the Liquidating Trust, except as such interest shall actually be received by the Liquidating Trustee.  Investments of any moneys held by the Liquidating Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs. For the removal of doubt, the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Trust Property and to further the liquidating purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills.

10.    **Limitations on the Liquidating Trustee and Payment of Fees.**  The Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust or beneficiaries of the Liquidating

Trust: (i) enter into or engage in any trade or business, and no part of the Trust Property or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (ii) except as provided in the Liquidating Trust Agreement, reinvest any Trust Property.  The Liquidating Trustee may invest funds held in the Liquidating Trust consistent with the requirements of the Liquidating Trust Agreement and the prudent person standard of care, provided that the Liquidating Trustee shall have no liability in the event of insolvency of any financial institution in which he/she has invested any funds of the Liquidating Trust to the extent such institution is on the list of approved depositories by the United States Trustee.  The Liquidating Trustee shall hold, collect, conserve, protect and administer the Liquidating Trust in accordance with the provisions of the Liquidating Trust Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in the Liquidating Trust Agreement.  Any determination by the Liquidating Trustee as to what actions are in the best interests of the Liquidating Trust shall be determinative.

11. **Bankruptcy Court Approval of Trustee Actions.**  Except as provided in the Plan or otherwise specified in the Liquidating Trust Agreement, the Liquidating Trustee need not obtain the approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder or account to the Bankruptcy Court.  The Liquidating Trustee shall exercise his business judgment for the benefit of the beneficiaries of the Liquidating Trust in order to maximize the value of the Trust Property and distributions, giving due regard to the cost, risk, and delay of any course of action.  Notwithstanding the foregoing, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Liquidating Trustee may desire to have explicit direction and/or approval of the Bankruptcy Court with respect to the Trust Property, the Liquidating Trust, the Liquidating Trust Agreement, the Plan, or the Debtor.  The Liquidating Trustee also shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Trust Property free and clear of any and all liens, claims and encumbrances.

12. **Valuation of Trust Property.**  The Trustee shall make best efforts to understand and apprise the Trust Beneficiaries of the fair market value of the Trust Property.  The valuation

53

shall be used consistently by all parties (including the Trustee and Trust Beneficiaries) for all federal income tax purposes.  Any dispute regarding the valuation of Trust Property shall be resolved by the Bankruptcy Court.

13.   **Distributions.**  The Liquidating Trustee shall distribute at least annually to the beneficiaries of the Liquidating Trust all net cash income plus all net cash proceeds from the liquidation of Trust Property; provided, however, that the Liquidating Trustee shall maintain at all times adequate cash or marketable securities as reserves, including the Disputed Claim Reserve (defined below) as may be reasonably necessary to maintain the value of the Trust Property, satisfy projected expenses and meet claims and contingent liabilities of the Liquidating Trust.  The Liquidating Trustee may request the Bankruptcy Court to resolve any dispute or to rule upon any inquiry regarding the adequacy of reserves.

14.   **Pro Rata Share of Distributions.**  Each of the beneficiaries of the Liquidating Trust shall receive its share or pro rata share (as applicable) of any and all distributions made by the Liquidating Trustee.  The Liquidating Trustee may withhold from amounts distributable to any beneficiary of the Liquidating Trust any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

15.   **Delivery of Distributions.**  All distributions to be made to the beneficiaries of the Liquidating Trust shall be made by the Liquidating Trustee in accordance with the terms of the Plan.

16.   **Undelivered Property.**  Any beneficiary of the Liquidating Trust that fails to claim any cash within ninety (90) days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan, and shall not be subject to the unclaimed property or escheat laws of any governmental unit. Upon forfeiture, such cash (including interest thereon) shall be made available for re-distribution to all other beneficiaries of the Liquidating Trust. Beneficiaries of the Liquidating Trust who fail to claim cash shall forfeit their rights thereto and shall have no claim whatsoever against the Liquidating Trust or the Liquidating Trustee, as applicable, or any of the other beneficiaries of the Liquidating Trust to

whom distributions are made under the Plan; provided, however, that the Liquidating Trustee may, but is not required to, undertake reasonable efforts, in his business judgment, to locate beneficiaries of the Liquidating Trust whose distributions are returned as undeliverable or whose checks are not timely cashed.

17.   **De Minimis Distributions.**  No distribution shall be required to be made to any beneficiary of the Liquidating Trust under the Plan and the Liquidating Trust Agreement to any beneficiary unless such distribution will amount to at least $25.00, unless the Liquidating Trustee determines otherwise in his sole discretion. Any beneficiary of the Liquidating Trust on account of which the amount of cash to be distributed pursuant to any distribution from the Liquidating Trust is less than $25.00 shall be deemed to have no claim for such distribution against the Debtor, the Liquidating Trust, the Liquidating Trustee or the Trust Property.

18.   **Payments Limited to Trust Property.**  All payments to be made by the Liquidating Trustee to or for the benefit of any beneficiary of the Liquidating Trust shall be made only to the extent that the Liquidating Trustee has sufficient reserves to make such payments in accordance with the Liquidating Trust Agreement and the Plan.  Each beneficiary of the Liquidating Trust shall have recourse only to the Trust Property for distribution under the Liquidating Trust Agreement and the Plan.

19.   **Fees and Expenses.**  Subject to the limitations set forth in the Liquidating Trust Agreement and in the Plan, the Liquidating Trustee shall pay and/or reserve for the operating and administrative expenses of the Liquidating Trust before approving distributions to or for the benefit of the beneficiaries of the Liquidating Trust.  The Liquidating Trustee shall satisfy any fees and expenses of the Liquidating Trust with Trust Property.

20.   **Priority of Distributions.**  Any recovery by the Liquidating Trust on account of

the Trust Property shall be applied in the following order:

      a.    First, to pay and/or reserve for any unpaid or reasonably anticipated costs and expenses of the Liquidating Trust, including, without limitation, reasonable professional fees and expenses and court costs;

      b.    Second, distributed to the beneficiaries of the Liquidating Trust in accordance with the Liquidating Trust Agreement and the Plan.

    **21.**    **Compliance with Laws.**  Any and all distributions of Trust Property shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

    **22.**    **Identification of the Beneficiaries of the Liquidating Trust.**  Each of the beneficiaries of the Liquidating Trust shall be recorded and set forth in a schedule (the "Beneficiary Schedule") maintained by the Liquidating Trustee.  In order to determine the actual names and addresses of the beneficiaries of the Liquidating Trust, the Liquidating Trustee may either (i) rely upon the Beneficiary Schedule, or (ii) deliver a notice to the beneficiaries of the Liquidating Trust.  Such notice will include a form for each beneficiary of the Liquidating Trust to complete in order to be properly registered as a beneficiary of the Liquidating Trust and be eligible for distributions under the Liquidating Trust Agreement and the Plan.

    **23.**    **Beneficial Interest Only.**  The ownership of a beneficial interest in the Liquidating Trust shall not entitle any beneficiary of the Liquidating Trust or the Debtor to any title in or to the Trust Property or to any right to call for a partition or division of such Trust Property or to require an accounting, except as specifically provided in the Liquidating Trust Agreement.

    **24.**    **Ownership of Beneficial Interests Hereunder.**  Subject to the requirements and limitations of the Liquidating Trust Agreement, each beneficiary of the Liquidating Trust shall own a beneficial interest in the Liquidating Trust equal in proportion to such Trust Beneficiary's pro rata share of its allowed claim in class 14 and class 15 under the Plan.

    **25.**    **Evidence of Beneficial Interest.**  Ownership of a beneficial interest in the Liquidating Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating

56

Trust by the Liquidating Trustee, including the Beneficiary Schedule.

26. **Conflicting Claims.**  If any conflicting claims or demands are made or asserted with respect to a beneficial interest, the Liquidating Trustee shall be entitled, at his sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Liquidating Trustee may elect to make no payment or distribution with respect to the beneficial interest represented by the claims or demands involved, or any part thereof, and the Liquidating Trustee shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Liquidating Trustee shall not be or become liable to any party for his refusal to comply with any of such conflicting claims or demands. The Liquidating Trustee shall be entitled to refuse to act until either (a) the rights of the adverse claimants have been adjudicated by a final order or (b) all differences have been resolved by a written agreement among all of such parties and the Liquidating Trustee, which agreement shall include a complete release of the Liquidating Trust and the Liquidating Trustee (the occurrence of either (a) or (b) being referred to as a "Dispute Resolution" in this paragraph). Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Liquidating Trustee shall hold in a segregated interest-bearing account with a United States financial institution any payments or distributions from the Liquidating Trust to be made with respect to the beneficial interest at issue.  Promptly after a Dispute Resolution is reached, the Liquidating Trustee shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

27. **Limitation on Transferability.**  It is understood and agreed that the beneficial interests in the Liquidating Trust shall not be assignable, other than by operation of law.

28. **Parties Dealing With the Liquidating Trustee.**  In the absence of actual knowledge to the contrary, any person dealing with the Liquidating Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee or any of the Liquidating Trustee's agents or professionals to act in connection with the Trust Property.  No person or entity dealing with the Liquidating Trustee shall have any obligation to inquire into the

57

validity, expediency or propriety of any transaction by the Liquidating Trustee or any agent or professional of the Liquidating Trustee.

29.    **Trustee's Liability.**    In exercising the rights granted in the Liquidating Trust Agreement and the Plan, the Liquidating Trustee shall exercise his best judgment to the end that the affairs of the Liquidating Trust shall be properly managed and the interests of all the beneficiaries of the Liquidating Trust and the Debtor are safeguarded.

30.    **Indemnity.**    The Liquidating Trustee and each of the Liquidating Trustee's respective agents, employees, professionals, attorneys, accountants, advisors and representatives (collectively, the "Liquidating Trust Indemnified Parties") shall be indemnified and held harmless by the Liquidating Trust, to the fullest extent permitted by law, solely from the Trust Property for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Liquidating Trust Indemnified Parties may incur or to which the Liquidating Trust Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Liquidating Trust Indemnified Parties on account of the acts or omissions of a Liquidating Trust Indemnified Party solely in its capacity as such; provided, however, that the Liquidating Trust shall not be liable to indemnify any Liquidating Trust Indemnified Party for any act or omission constituting gross negligence, bad faith, fraud or willful misconduct by such Liquidating Trust Indemnified Party. Notwithstanding any provision herein to the contrary, the Liquidating Trust Indemnified Parties shall be entitled to obtain advances from the Liquidating Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of a Liquidating Trust Indemnified Party in its capacity as such. The foregoing indemnity in respect of any Liquidating Trust Indemnified Party shall survive the termination of such Liquidating Trust Indemnified Party from the capacity for which it is indemnified.

31.    **Initial Liquidating Trustee.**    The Liquidating Trustee shall be designated as set forth above.

32.    **Term of Service of the Liquidating Trustee.**    The Liquidating Trustee shall serve

until (a) the completion of all the Liquidating Trustee's duties, responsibilities and obligations under the Liquidating Trust Agreement and the Plan; (b) termination of the Liquidating Trustee in accordance with the Liquidating Trust Agreement; or (c) the Liquidating Trustee's death, resignation or removal.

33.    **Removal of the Liquidating Trustee.**  The Liquidating Trustee may be removed only upon the entry of an order of the Bankruptcy Court that such removal is appropriate upon a showing of good cause.  The removal shall be effective upon the date specified in such entered order of the Bankruptcy Court, subject to the payment of all amounts owing to the Liquidating Trustee as of such date.  In the event of any such removal, the Liquidating Trustee shall submit to the Bankruptcy Court and any successor a full and complete accounting of monies and Trust Property received, disbursed, and held during the term of office of that Liquidating Trustee.

34.    **Resignation of the Trustee.**  The Liquidating Trustee may resign at any time by filing with the Bankruptcy Court at least ninety (90) days written notice of his intention to do so. In the event of a resignation, the resigning Liquidating Trustee shall submit to the Bankruptcy Court a full and complete accounting of monies and Trust Property received, disbursed, and held during the term of office of that Liquidating Trustee.  The resignation shall be effective on the later to occur of:  (i) the date specified in the notice; or (ii) the appointment of a successor Liquidating Trustee by order of the Bankruptcy Court and the acceptance by such successor of such appointment; *provided*, that if a successor Liquidating Trustee is not appointed or does not accept his/her appointment within ninety (90) days following delivery of notice of resignation, the resigning Liquidating Trustee may petition the Bankruptcy Court for the appointment of a successor Liquidating Trustee.

35.    **Appointment of Successor Trustee.**  Upon the resignation, death, incapacity, or removal of the Liquidating Trustee, a successor Liquidating Trustee shall be appointed pursuant to an order of the Bankruptcy Court.  Any successor Liquidating Trustee so appointed shall consent to and accept in writing the terms of the Liquidating Trust Agreement and agree that the provisions of the Liquidating Trust Agreement and the Plan shall be binding upon and inure to

the benefit of the successor Liquidating Trustee.

**36.    Powers and Duties of Successor Trustee.**  A successor Liquidating Trustee shall have all the rights, privileges, powers, and duties of his/her predecessor under the Agreement and the Plan.  Notwithstanding anything to the contrary herein, a removed or resigning Trustee shall, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the Trust Agreement all the estates, properties, rights, powers, and trusts of such predecessor Trustee.

**37.    Trust Continuance.**  The death, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.  In the event that a successor Trustee is not appointed within thirty (30) days of when required under this Agreement, any Trust Beneficiary may apply to the Bankruptcy Court for appointment of a successor Trustee upon notice to the Trustee.

**38.    Compensation and Costs of Administration.**  The Liquidating Trustee shall receive compensation for his services provided under the Liquidating Trust Agreement and such compensation terms shall be ~~identified by the Debtor at least fourteen (14) days prior to the Plan Confirmation Hearing.~~ negotiated between the Debtor and the proposed Liquidating Trustee.  It is the Debtor's goal to negotiate terms that provide that compensation shall not exceed the sum of $500 per hour plus reimbursement of reasonable expenses, absent further order of the Court.  As provided above, all fees and costs of the Liquidating Trust (and agents thereof) arising from or relating to pursuing litigation or causes of action or other services performed at the request of the Liquidating Trustee on behalf of the Liquidating Trust shall be paid as a first priority in right of distribution from the Liquidating Trust, subject to a cap of $75,000, provided, however, that the Liquidating Trustee may request from the Bankruptcy Court upon a showing of cause an increase in such cap.

**39.    Annual Reporting and Filing Requirements.**  The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations, and shall furnish information statements to the Trust Beneficiaries setting forth their allocable share of the income, loss, deduction or

credit of the Trust and instruct them to report such items on their federal income tax returns.  The Liquidating Trustee may withhold from amounts distributable to any Trust Beneficiary any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.  The Liquidating Trustee shall have the right to employ an accountant and any other professionals needed to assist the Liquidating Trustee for this purpose.  The tax returns filed by the Liquidating Trustee shall report all Liquidating Trust earnings for the taxable year being reported.  All of the Trust'sLiquidating Trust's income shall be treated as subject to tax on a current basis.  For federal income tax purposes, items of income, gain, loss, and deduction of the Liquidating Trust will be allocated to the Trust Beneficiaries in a manner, to be determined by the Liquidating Trustee, that is consistent with applicable Treasury Regulations and that reflects the Trust Beneficiaries'' respective contributions and their respective interests in the interim and final distributions to be made by the Liquidating Trust, and such Trust Beneficiaries shall be responsible for the payment of taxes on a current basis that result from such allocations.

40.   **Confidentiality.**  The Liquidating Trustee shall, while serving as the Liquidating Trustee under the Liquidating Trust Agreement and for a period of twelve (12) months following the termination of the Liquidating Trust Agreement or following his removal or resignation thereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Trust Property relate or of which he/she has become aware in his capacity as Liquidating Trustee.

41.   **Maintenance of Records.**  The Liquidating Trustee shall maintain books and records containing a description of all property from time to time constituting the Trust Property and an accounting of all receipts and disbursements.  Upon sixty (60) days' prior written notice delivered to the Liquidating Trustee, such books and records shall be open to inspection by any beneficiary of the Liquidating Trust at any reasonable time during normal business hours; *provided* that, if so requested, such beneficiary of the Liquidating Trust shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee.  The Liquidating Trustee shall furnish to any beneficiary of the Liquidating Trust upon written request

an annual statement of receipts and disbursements of the Liquidating Trust.  Such books and records may be destroyed without further notice to parties or approval of the Bankruptcy Court five (5) years after the final report to the Bankruptcy Court has been rendered by the Trustee (unless such records and documents are necessary to fulfill the Trustee's obligations pursuant to the Liquidating Trust Agreement).

42.    **Duration of the Liquidating Trust.**  The Liquidating Trust shall become effective upon the Effective Date of the Plan.  Thereupon, the Liquidating Trust Agreement shall remain and continue in full force and effect until the Liquidating Trust is terminated in accordance with the provisions of the Liquidating Trust Agreement and the Plan.

43.    **Termination of the Liquidating Trust.**  The Liquidating Trust (and the duties, responsibilities and powers of the Liquidating Trustee) shall terminate on the later of (a) the date which is five (5) years after the Effective Date; and (b) the date when full resolution of all Trust Property transferred to the Liquidating Trust has occurred, including distribution of the Trust Property and the net proceeds thereof, in accordance with the Plan and the Liquidating Trust Agreement; provided however, that, for cause, the Liquidating Trustee may seek earlier termination of the Liquidating Trust or an extension of the term of the Liquidating Trust upon application to the Bankruptcy Court.  The Liquidating Trustee shall not unduly prolong the duration of the Liquidating Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute Trust Property and to effect the distribution of the Trust Property to the beneficiaries of the Liquidating Trust in accordance with the Plan and terminate the Liquidating Trust as soon as practicable.  Upon such termination, except as otherwise set forth in the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be discharged from his position as Liquidating Trustee and from all further duties, obligations and responsibilities under the Plan.

44.    **Continuance of the Liquidating Trust for Winding Up.**  After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until his duties have been fully performed, including, without limitation, such post-distribution tasks as necessary to

windup the affairs of the Liquidating Trust.  After the termination of the Liquidating Trust, the Liquidating Trustee shall retain for a period of two (2) years the books, records, beneficiary lists, and certificates and other documents and files that have been created by the Liquidating Trustee. At the Liquidating Trustee's discretion, all such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Liquidating Trust.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Liquidating Trust and final distribution of the Trust Property, the Liquidating Trustee shall have no further duties or obligations under the Plan or the Liquidating Trust Agreement.  The Liquidating Trustee may pay in advance from the Trust Property all costs of document management.

45. **Preservation of Privilege**.  In connection with the rights, claims, and causes of action that constitute the Trust Property, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust pursuant to the terms of the Plan or otherwise shall vest in the Liquidating Trustee and his representatives, and the Debtor and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, as necessary.

46. **No Bond**.  Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.

47. **Governing Law of the Liquidating Trust**.  The Liquidating Trust Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to principles of conflicts of law.

48. **Successors and Assigns**.  The Liquidating Trust Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

49. **No Execution**.  All Trust Property shall be deemed *in custodia legis* until such times as the Trust Property has actually been paid to or for the benefit of a beneficiary of the Liquidating Trust, and no beneficiary of the Liquidating Trust or any other person can execute upon, garnish or attach the Trust Property or the Liquidating Trust in any manner or compel

63

payment from the Liquidating Trust except by an order of the Bankruptcy Court that becomes a final order.  Payment will be solely governed by the Liquidating Trust Agreement and the Plan.

**50.    Intention to Establish Grantor Trust.**  The Liquidating Trust Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

**51.    Amendment of the Liquidating Trust Agreement.**  The Liquidating Trust Agreement may be amended at any time by order of the Bankruptcy Court after motion by the Liquidating Trustee.

**B.    Settlement Agreements**

Any settlement effectuated prior to the confirmation of the Plan, upon notice thereof to the Bankruptcy Court, shall be deemed incorporated into the Plan and the Plan Confirmation Order including provisions of such settlement that shall be deemed a settlement pursuant to section 1123(b)(3)(A) of the Bankruptcy Code.

**C.    Claims Administration and Prosecution and Plan Distributions.**

On and after the Effective Date, in addition to the rights provided to the Liquidating Trustee in the Liquidating Trust Agreement, the Liquidating Trustee shall have the power and authority to prosecute and resolve objections to disputed secured claims, disputed administrative expense claims, disputed priority tax claims, disputed priority non-tax claims and disputed general unsecured claims.  The Liquidating Trustee shall have the right, power and authority to retain and assert all defenses, rights of setoff, recoupment and counterclaims with respect to each of the foregoing.  The Liquidating Trustee shall also have the power and authority to hold, manage and distribute Plan distributions to the holders of allowed claims consistent with the Plan and the Liquidating Trust Agreement.

**D.    Books and Records of The Debtor**

Unless applicable non-bankruptcy law permits the distribution or destruction of certain of the Debtor's business records at an earlier date, or the Debtor or the Liquidating Trust obtains an order of the Bankruptcy Court providing otherwise, subject to the terms and conditions of the Liquidating Trust Agreement governing the books and records of the Liquidating Trust, the

Liquidating Trustee shall have the responsibility of storing and maintaining the Debtor's books and records until one year after the Effective Date, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order, unless applicable non-bankruptcy law requires the retention and maintenance of any such books and records for a longer period, in which instance the Liquidating Trustee shall retain such books and records for at least the minimum period required by applicable non-bankruptcy law. For purposes of this section, books and records include computer generated or computer maintained books and records and computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in possession of third parties and all of the claims and rights of the Debtor in and to their books and records, wherever located.

**E.      Corporate Action**

On the Effective Date, the Liquidating Trustee may perform each of the actions and effect each of the transfers required by the terms of the Plan in the time period allocated therefor, and all matters provided for under the Plan that would otherwise require approval of the directors or comparable governing body of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the state in which the Debtor is incorporated or organized, without any requirement of further action by the directors (or other governing body) of the Debtor.

**F.      Effectuating Documents and Further Transactions**

The Liquidating Trustee is authorized and directed to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Liquidating Trust Agreement.

**G.      Dissolution of the Debtor**

On the Effective Date, and after the transfer of the Trust Property to the Liquidating Trust, the Debtor shall be deemed dissolved without any further action required, or shall otherwise wind down, under applicable law.

**H.   Procedures for Disputed, Contingent, or Unliquidated Claims**

**1.   Objections to Claims.** From and after the Effective Date, the Liquidating Trust shall be entitled to object to any and all claims against the Debtor's bankruptcy estate.

**2.   No Distribution Pending Allowance of Claims.** Notwithstanding any other provision of the Plan, if any portion of a claim is a disputed claim, no payment or distribution provided under the Plan shall be made on account of such disputed claim unless and until such disputed claim becomes an allowed claim.

**3.   Reserves on Account of Disputed Claims.**

a.   Establishment and Maintenance of a Reserve for Disputed Claims. The Liquidating Trust shall maintain a disputed claim reserve (the "Disputed Claim Reserve") at an amount equal to the aggregate of 100% of the distributable amounts to which holders of such disputed claims would be entitled under the Plan if such disputed claims were allowed claims in their disputed claim amounts or such lesser amount as required by a final order of the Bankruptcy Court. The Bankruptcy Court may fix or liquidate the amount of any disputed claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed the amounts of the disputed claims for purposes of distribution under the Plan. In lieu of fixing or liquidating the amount of any disputed claim, the Bankruptcy Court may determine the amount to be reserved for such disputed claim or such amount may be fixed by agreement in writing between the Liquidating Trustee and the holder of a disputed claim.

b.   Distributions upon Allowance of Disputed Claims. The holder of a disputed claim that becomes an allowed claim shall receive a distribution(s) in cash from the Disputed Claim Reserve as set forth in, and subject to the terms of the Plan and the Liquidating Trust Agreement. Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such holder under the Plan if the disputed claim had been an allowed claim on or prior to the Effective Date. No holder of a disputed claim shall have any claim against the Disputed Claim Reserve or the Liquidating Trust with respect to such disputed claim until such disputed claim becomes an allowed claim, and no holder of a disputed claim shall have any right to interest on such disputed claim.

**4.**    **Resolution of Disputed Claims.**  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, following the Effective Date, the Liquidating Trustee shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 328(a), 330 and 503 of the Bankruptcy Code) to make and file objections to claims and shall serve a copy of each objection upon the holder of the claim to which the objection is made as soon as practicable, but in no event later than one hundred eighty (180) days after the Effective Date (subject, however, to the right of the Liquidating Trustee to seek an extension of time to file such objections by seeking such extension with approval from the Bankruptcy Court).

**5.**    **Estimation.**  The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or disputed claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor of the Liquidating Trust previously objected to such claim, and the Bankruptcy Court shall retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated or disputed claim, the amount so estimated shall constitute either the allowed amount of such claim or a maximum limitation on such claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Effective Date, claims that have been estimated may be compromised, settled, withdrawn or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**I.    Distributions to be Made Pursuant to the Plan**

Distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1000, or, if a different address is stated in a proof of claim timely filed with the Bankruptcy Court, to such address.  Checks

issued to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

**J.     Exculpations and Releases**

To the maximum extent permitted by law, ~~neither~~ the Debtor, ~~the Liquidating Trust, the Liquidating Trustee, nor any of their respective employees, officers, directors, shareholders, agents, members, representatives, or~~<u>Barak Bussel, Ringo Chong together with the</u> professionals employed or retained by ~~any of them, shall~~<u>the Debtor pursuant to an application filed file, and approved by, the Bankruptcy Court (the "Professionals"), shall not</u> have or incur any liability to any person or entity for any act taken or omission made in good faith <u>after the Petition Date and on or before the Effective Date</u> in connection with or related to the formulation and implementation of the Plan or the Liquidating Trust Agreement, or any contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein~~.~~ <u>(the "Exculpated Claims"), except for willful misconduct, gross negligence, or professional malpractice. For the avoidance of doubt, the exculpations and releases provided with respect to the Professionals shall only apply to Exculpated Claims arising during the period such Professional was a Bankruptcy Court-approved Professional and shall not apply to any Exculpated Claims arising prior thereto or thereafter.</u>

**K.     Injunctions**

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.  Except as provided in the Plan or the Plan Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of a creditor or equity security holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtor, the Liquidating Trust, or their property on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or

68

in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan.   By accepting distribution pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section.

**L.      Executory Contracts and Unexpired Leases**

On the Effective Date, all of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor shall be deemed to be rejected. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE EFFECTIVE DATE WILL BE THIRTY DAYS AFTER THE EFFECTIVE DATE.**   Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**M.      Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to any governmental regulatory commission approval of its rates.

**N.      Retention of Jurisdiction**

After confirmation of the Plan and occurrence of the Effective Date, in addition to any jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.      To resolve any and all disputes regarding the operation and interpretation of the Plan;

ii.      To resolve any and all disputes regarding the operation and interpretation of the Plan Confirmation Order;

iii.     To determine the allowability, classification, or priority of claims upon objection by the Debtor, the Liquidating Trustee, or any other parties in interest with standing to bring such objection or proceeding and to consider any objection to claim whether such objection is filed before or after the Effective Date;

iv.     To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate;

v.     To construe and take any action to enforce the Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan and the Plan Confirmation Order, and all matters referred to in the Plan and the Plan Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this case on or before the Effective Date with respect to any person or entity related thereto;

vi.     To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vii.     To determine any request for payment of administrative expenses;

viii. To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

ix.     To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this bankruptcy case whether before, on, or after the Effective Date including avoidance causes of action, and the Liquidating Trustee shall have the right and standing to commence any avoidance causes of action after the Effective Date and to continue with the prosecution of any avoidance causes of action commenced by the Debtor prior to the Effective Date;

x.     To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

xi.    To modify the Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

xii.    Except as otherwise provided in the Plan or the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Plan Confirmation Order;

xiii. To issue such orders in aid of consummation of the Plan or the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

xiv.    To enter a final decree closing this Chapter 11 case.

## VI.    TAX CONSEQUENCES OF THE PLAN

**INTERNAL REVENUE SERVICE ("IRS") CIRCULAR 230 DISCLOSURE:    TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, EACH HOLDER OF A CLAIM IS HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF U.S. FEDERAL INCOME TAX CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "TAX CODE"); (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

The following disclosure (the "Tax Disclosure") summarizes certain federal income tax consequences of the implementation of the Plan to holders of allowed general unsecured claims

and the Debtor.  It does not address the specific federal income tax consequences to those with a unique position with respect to their treatment, such as those holding secured claims or other claims treated under the terms of separate agreements made with the Debtor.  Priority claims are also not specifically addressed, for they are unimpaired.  General withholding obligations are, however, addressed for all holders of claims.

Moreover, the Tax Disclosure summarizes only some of the federal income tax consequences associated with the Plan's implementation; other consequences are not addressed. Certain of the federal income tax consequences described in the Tax Disclosure are complex and are subject to uncertainties.  The Debtor has not requested a ruling from the IRS or an opinion of counsel with respect to any of the tax aspects of the Plan.  Thus, no assurance can be given as to the interpretation that the IRS will adopt.  It is important to note that the Debtor has not retained any tax professional, including any tax counsel or tax accountant.

In addition, the Tax Disclosure does not attempt to consider any facts or limitations applicable to any particular holder of a claim which may modify or alter the consequences described below.  Examples of particular taxpayers who might have special tax treatment include but are not limited to those who hold a claim as a capital asset, foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations, and investors in pass-through entities.  The Tax Disclosure also does not address state, local, or foreign tax consequences or the consequences of any federal tax other than the federal income tax.

The following summary is based on the Tax Code, the regulations promulgated thereunder by the Department of the Treasury ("Treasury Regulations"), judicial decisions, and published administrative rules and pronouncements of the IRS in effect on the date hereof.  Changes in, or new interpretations of, such rules may have retroactive effect and could significantly affect the federal income tax consequences described below.

**ACCORDINGLY, THE FOLLOWING SUMMARY OF CERTAIN FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED**

72

UPON THE INDIVIDUAL CIRCUMSTANCES OF A HOLDER OF A CLAIM.  EACH HOLDER OF A CLAIM IS URGED TO CONSULT HIS, HER OR ITS OWN TAX ADVISOR FOR THE FEDERAL, STATE, LOCAL, AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.

A.    Withholding Applicable to all Holders of Claims

All payments transferred under the Plan are subject to applicable tax withholding (including employment tax withholding).

Under federal income tax law, interest and other reportable payments may be subject to "backup withholding," at a rate of 28%.  Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number ("TIN"), (b) furnishes an incorrect TIN, (c) fails to report properly interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is not subject to backup withholding.  Backup withholding is not an additional tax, but merely an advance payment that may be refunded to the extent it results in an overpayment of tax.  Certain persons are exempt from backup withholding.

B.    Tax Consequences to Holders of Allowed General Unsecured Claims

1.    Recognition of Gain or Loss Generally

Pursuant to the Plan, on the Effective Date, except to the extent that the holder of a class 14 or class 15 claim agrees to a different treatment, such persons will receive on account of their allowed claim, in full and complete satisfaction thereof, one or more *pro rata* distributions of the cash in the Liquidating Trust based upon the amount of the respective holder's allowed claim and claim priority.  In general, each holder of such an allowed claim will recognize gain or loss in an amount equal to the difference between (i) the sum of the amount of any cash and the fair market value of any other property that such class 8 claim holder receives in satisfaction of its claim (other than in respect of any claim for accrued but unpaid interest, and excluding any portion required to be treated as imputed interest due to the post-Effective Date distribution of such consideration upon the resolution of disputed claims), and (ii) such holder's adjusted tax basis in its claim (other than any claim for accrued but unpaid interest).

73

Due to the possibility that a holder of an allowed claim may receive more than one distribution subsequent to the Effective Date (due to the subsequent disallowance of certain disputed claims or unclaimed distributions), the imputed interest provisions of the IRC may apply to treat a portion of such later distributions to such holders as imputed interest. In addition, it is possible that any loss realized by a holder in satisfaction of an allowed class 8 claim may be deferred until all subsequent distributions relating to disputed claims are determinable, and that a portion of any gain realized may be deferred under the "installment method" of reporting. Holders of such allowed claims are urged to consult their own tax advisors regarding the possibility for deferral and the potential ability to elect out of the installment method of reporting any gain realized in respect of their claims.

Where a claimant recognizes gain or loss in respect of its claim, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the claimant, whether the claim constitutes a capital asset in the hands of the claimant and how long it has been so held, whether the claimant had acquired the claim at a market discount, and whether and to what extent the claimant had previously claimed a bad debt deduction. A claimant that purchased its claim from a prior claimant at a market discount may be subject to the market discount rules of the IRC. Under those rules, assuming that the claimant has made no election to amortize the market discount into income on a current basis with respect to any market discount instrument, any gain recognized on the exchange of such claim (subject to a *de minimis* rule) generally would be characterized as ordinary income to the extent of the accrued market discount on such claim as of the date of the exchange.

### 2. Distributions in Payment of Accrued But Unpaid Interest

Distributions to any holder of an allowed class 8 claim will be allocated first to the original principal portion of such claim as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the portion of such claim representing accrued but unpaid interest. However, there is no assurance that the IRS would respect such allocation for federal income tax purposes.

To the extent a holder of debt receives an amount of cash or property in satisfaction of interest accrued during its holding period, such claimant generally recognizes taxable interest income in such amount (if not previously included in the claimant's gross income).  Conversely, a claimant generally recognizes a deductible loss to the extent any accrued interest claimed was previously included in its gross income and is not paid in full.  Each claimant is urged to consult its own tax advisor regarding the allocation of consideration and the deductibility of unpaid interest for U.S. federal income tax purposes.

**C.   Tax Consequences for the Debtor**

The Debtor does not believe that there will be any negative tax consequences to the Debtor resulting from the confirmation of the Plan.

<strong>VII.   CONFIRMATION REQUIREMENTS AND PROCEDURES</strong>

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues that they may wish to consider, as well as certain deadlines for filing claims.  The Debtor CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Bankruptcy Court can confirm a plan.  Some of the requirements include that the plan must be proposed in good faith, acceptance of the plan, whether the plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the plan is feasible.  These requirements are not the only requirements for confirmation.

**A.   Who May Vote or Object**

Any party in interest may object to the confirmation of the Plan, but, as explained below, not everyone is entitled to vote to accept or reject the Plan.

**B.   Who May Vote to Accept/Reject the Plan**

75

A creditor has a right to vote for or against the Plan if that creditor has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

**C.      What Is an Allowed Claim**

As noted above, a creditor must first have an <u>allowed claim</u> to have the right to vote. Generally, any proof of claim will be allowed, unless a party in interest files an objection to the claim. When an objection to a claim is filed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE ON ACCOUNT OF PRE-PETITION CLAIMS WAS OCTOBER 16, 2025 WITH RESPECT TO ALL CREDITORS EXCEPT FOR GOVERNMENTAL UNITS.    THE BAR DATE FOR GOVERNMENTAL UNITS TO FILE A PROOF OF CLAIM IN THIS CASE ON ACCOUNT OF PRE-PETITION CLAIMS WAS DECEMBER 21, 2025.  A creditor may have an allowed claim even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.

A detailed claims chart is attached hereto as **<u>Exhibit B</u>**.  The claims chart identifies all claims which were scheduled by the Debtor, including the amounts and priorities of the claims and whether the Debtor contends that the claims are disputed, contingent or unliquidated.  The claims chart also identifies all proofs of claim which were filed by creditors asserting claims against the Debtor, including the amounts and priorities of the claims asserted.  Finally, the claims chart indicates whether the Debtor has disputed or presently disputes any portion of the claims. The Debtor reserves the right to update and modify the claims chart at any time and to file objections to claims even if the claims chart does not identify any dispute relating to a particular claim.

**D.      What Is an Impaired Claim.**

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or

contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

The Debtor believes that members of classes 1 – 5, and 8, are impaired and entitled to vote to accept or reject the Plan.  The Debtor believes that members of classes 6, 7 and 9 are not impaired and are therefore not entitled to vote to accept or reject the Plan.  Parties who dispute the Debtor's characterization of their claim as being impaired or unimpaired may file an objection to the Plan contending that the Debtor has incorrectly characterized the class.

**E.    Who Is Not Entitled to Vote.**

The following four types of claims are not entitled to vote:  (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(2), (a)(3), and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Bankruptcy Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**F.    Who Can Vote in More Than One Class.**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject the Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

**G.    Votes Necessary to Confirm the Plan.**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2)

all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

**H.      Votes Necessary for a Class to Accept the Plan.**

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted on the plan, voted in favor of the plan.

**I.      Treatment of Non-Accepting Classes.**

As noted above, even if <u>all</u> impaired classes do not accept the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner required by the Bankruptcy Code.  The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to be "crammed down" on non-accepting classes of claims if it meets all consensual requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

**J.      Request for Confirmation Despite Nonacceptance by Impaired Class(es).**

The Debtor will ask <u>the Court</u> to confirm the Plan by cramdown on any and all impaired classes that do not vote to accept the Plan.

**K.      Liquidation Analysis.**

Another confirmation requirement is the "Best Interest Test", which requires a liquidation analysis.  Under the Best Interest Test, if a claimant is in an impaired class and that claimant does not vote to accept the Plan, then that claimant must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the debtor's assets are usually sold by a Chapter 7 trustee.  Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority

78

share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims.

For the Court to be able to confirm the Plan, the Court must find that all creditors who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation of the Debtor.  The Debtor maintains that this requirement is clearly met in this case.

The Plan is a liquidating Plan.  Under the Plan, classes 1, 2 and 6 will receive payment equal to the allowed amount of their respective claims, and classes 3 – 5 have agreed to the treatment of their respective claims in accordance with the Carve-Out Stipulation.  Accordingly, this requirement is met with respect to classes 1 – 6.

The members of class 7, comprised of holders of non-tax priority claims, will be paid the full amount of their allowed non-tax priority claims.  Accordingly, the requirement is met with respect to class 7.

Class 8 is comprised of holders of general unsecured claims.  Members of class 8 will receive a pro rata share of any unencumbered cash remaining after the liquidation of Trust Assets and the payment of all allowed secured, administrative and priority claims.  The Debtor projects that holders of class 8 allowed general unsecured claims will receive at least as much under the Plan as they would receive in a Chapter 7 liquidation of the Debtor because the Debtor is not proposing to retain any assets and will sell or liquidate all of its assets for the benefit of creditors.  Furthermore, the Debtor projects that creditors holding allowed class 8 claims will receive distributions from the Liquidating Trust sooner than they would in a chapter 7 liquidation, and will save the statutory fees and expenses that would otherwise be paid to a chapter 7 trustee.

Class 9 is comprised of holders of equity interests in the Debtor, and they will retain such equity interests, identical to what would occur in a chapter 7 case.

The Debtor has therefore satisfied the "best interests of creditors test" with respect to any members of classes 1-6, and 8 who vote against the Plan.  The Debtor also submits that the Plan provides fair and equitable treatment to all classes of creditors.

**L.     Feasibility.**

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor.

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date to pay all the claims and expenses that are entitled to be paid on such date. Given that the Debtor/Liquidating Trust already has sufficient funds to make all of these payments, this aspect of Plan feasibility is clearly satisfied.

The second aspect considers whether the Debtor will have enough cash over the life of the Plan to make the required Plan payments. Here, the Plan is a liquidating Plan, and this aspect of feasibility is not relevant to the Debtor or the Liquidating Trust's ability to comply with the terms of the Plan. Note, however, the prosecution of Retained Litigation Claims may require the expenditure of significant time and resources, and litigation outcomes are inherently uncertain. Any recoveries realized by the Liquidating Trust will be available for distribution only after payment of allowed administrative, secured, and priority claims, and the fees and costs of the Liquidating Trust and its professionals, in accordance with the Plan.

## VIII.   RISK FACTORS REGARDING THE PLAN

As described above, there is no meaningful risk to the Debtor's ability to satisfy the first aspect of Plan feasibility because the Debtor/Liquidating Trust will have enough cash on hand to pay all the claims and expenses that are entitled to be paid on the Effective Date or shortly thereafter.

The second aspect of feasibility is not relevant as the Liquidating Trust will take ownership of the Trust Assets for the benefit of its beneficiaries, sell or liquidate all of the Trust Assets, and distribute the proceeds to creditors according to the terms of the Plan.

## ~~VIII~~VIV.   EFFECT OF CONFIRMATION OF THE PLAN

**A.   Discharge.**

The Debtor will not receive a discharge under the Plan pursuant to and in accordance with the provisions of Section 1141 of the Bankruptcy Code because the Plan contemplates and will

result in a sale or liquidation of all or substantially all of the property of the Debtor's estate.

**B.    Modification of the Plan.**

The Debtor may modify the Plan at any time before confirmation.  However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on the Plan if the Debtor modifies the Plan before confirmation.  The Liquidating Trust may seek to modify the Plan at any time after confirmation of the Plan so long as (1) the Plan has not been substantially consummated, and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**C.    Post-Confirmation Status Reports and U.S. Trustee Post-Confirmation Report.**

Until a final decree closing the Debtor's Chapter 11 case is entered, the Liquidating Trust will file a quarterly status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.

Within five (5) business days of the Effective Date, the Debtor or the Liquidating Trustee shall file with the Bankruptcy Court a notice of the Plan's Effective Date.  Following the Effective Date, the Liquidating Trustee shall file quarterly post-confirmation reports ("PCR") pursuant to U.S. Trustee Guidelines.  The PCR must be filed every calendar quarter until one of the following occurs: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case.

**D.    Post-Confirmation Conversion/Dismissal.**

A creditor or any other party in interest may bring a motion to convert or dismiss the Debtor's Chapter 11 case under Section 1112(b) of the Bankruptcy Code after the Plan is confirmed if there is a default in performing the Plan.  If the Bankruptcy Court orders the Debtor's Chapter 11 case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Chapter 11 case.  The Plan Confirmation Order may also be revoked under very limited circumstances.  The Bankruptcy Court may revoke the Plan Confirmation

Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

///

///

///

///

///

///

///

**E.      Final Decree.**

Once this Chapter 11 estate has been fully administered as referred to in Bankruptcy Rule 3022, the Liquidating Trust will file a motion with the Bankruptcy Court to obtain a final decree to close the Debtor's Chapter 11 case.  The Liquidating Trust shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. Section 1930(a)(6) from the Trust Assets.

Dated: ~~January 20~~April 10, 2026

OSTENDO TECHNOLOGIES, INC.


By:_____
        BARAK BUSSEL, Interim Chief Executive Officer

Presented By:

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.


By:   */s/ Krikor J. Meshefejian*_____
        RON BENDER
        KRIKOR J. MESHEFEJIAN
        Attorneys for Chapter 11
        Debtor and Plan Proponent

| Summary report: Litera Compare for Word 11.7.0.54 Document comparison done on 4/10/2026 1:08:45 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Disclosure Statement 01202026.doc | |
| **Modified filename:** Amended Disclosure Statement 04102026 v1.doc | |
| **Changes:** | |
| Add | 136 |
| Delete | 60 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 196 |

# EXHIBIT "2"

RON BENDER (SBN 143364)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.
2818 La Cienega Avenue
Los Angeles, California 90034
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: RB@LNBYG.COM; KJM@LNBYG.COM

Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

1

In re:

OSTENDO TECHNOLOGIES, INC.,
a California corporation,

        Debtor and Debtor in Possession

Case No.: 1:125-bk-11111-VK

Chapter 11 Case

**DEBTOR'S CHAPTER 11 PLAN
(DATED ~~JANUARY 20~~APRIL 10, 2026)**

Disclosure Statement Hearing:
DATE:    ~~TBD~~May 6, 2026
TIME:    ~~TBD~~1:00 p.m.
PLACE:   Courtroom 301
          21041 Burbank Blvd.
          Woodland Hills, CA 91367

Plan Confirmation Hearing:
DATE:    TBD
TIME:    TBD
PLACE:   Courtroom 301
          21041 Burbank Blvd.
          Woodland Hills, CA 91367

## I.    INTRODUCTION

Ostendo Technologies, Inc., the Debtor and Debtor in Possession in the above-referenced Chapter 11 bankruptcy case (the "Debtor"), is the Debtor in a pending Chapter 11 bankruptcy case.  On June 24, 2025 (the "Petition Date"), the Debtor commenced its bankruptcy case by filing a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. ("Bankruptcy Code").  This document is the Debtor's Chapter 11 Plan (Dated ~~January 20~~April 10, 2026) ("Plan") that is being proposed by the Debtor.

Chapter 11 allows the Debtor, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization or liquidation.  This Plan is a plan of liquidation which has been proposed by the Debtor.  The effective date of this Plan (the "Effective Date") will be the first business day which is at least fifteen days following the date of entry of the Bankruptcy Court order confirming this Plan (the "Plan Confirmation Order") when and provided that all of the following conditions to the effectiveness of this Plan have been satisfied or waived by the Debtor: (a) there shall not be any stay in effect with respect to the Plan Confirmation Order; (b) the Plan Confirmation Order shall not be subject to any appeal or rehearing; and (c) this Plan and all documents, instruments and agreements to be executed in connection with this Plan have been executed and delivered by all parties to such documents, instruments and agreements.  All defined terms which are not defined herein shall have the same meaning provided to such terms in the Debtor's Disclosure Statement.  To the extent there is any discrepancy between the terms of this Plan and the description of this Plan set forth in the Disclosure Statement, the terms of this Plan shall govern.

## II.    PLAN SUMMARY

This Plan is a liquidating Plan.  On the Effective Date, the Debtor shall create and enter into a liquidating trust (the "Liquidating Trust") for the benefit of creditors, as set forth in this Plan and as described below.  The Liquidating Trust shall be a creditors' liquidating trust for all purposes, including Treasury Regulations Section 301.7701-4(d), and is intended to be treated as a grantor trust for federal income tax purposes.  The Liquidating Trust will be organized for the purpose of collecting, distributing, liquidating and otherwise disposing of all of the funds, property, claims, rights and causes of action of the Debtor and its estate which is assigned to the Liquidating Trust pursuant to, and in accordance with, this Plan.  The primary purpose of the Liquidating Trust under this Plan will be to investigate, prosecute and/or resolve, if appropriate, any claims and causes of action of the estate against third parties that are not resolved as of the Effective Date.  After the Liquidating Trust has been created and has taken ownership/assignment of all funds, property, claims, rights and causes of action of the Debtor and its estate, the Debtor shall dissolve or otherwise wind down pursuant to applicable law, and shall not conduct any further business and/or other activities.

The Debtor anticipates that available cash as of the Effective Date will be comprised of the following:

-Remaining Cash Collateral: $36,107

-Available Intangible IP Cash: Approximately $~~1,200,000~~968,000[1]

-Potential Tangible Personal Property Sale Proceeds: $~~100,000~~249,000 comprised of the Tangible Intellectual Property Sale Proceeds, plus ~~any~~ proceeds from the sale of the Equipment (not including the Moov Equipment)

-Moov Equipment Proceeds: $30,000 ($10,000 of which is the Moov Carve-Out)

---

[1] As ~~set forth above, as~~ of the date of the filing of this Plan, Available Intangible IP Cash equals approximately $~~1,825,973.77~~1,321,009.53.  It is anticipated that if the Court grants the Debtor's ~~second~~third cash collateral motion and the expenses requested to be paid are paid, the total amount of Available Intangible IP Cash as of ~~March 1~~July 31, 2026 will be approximately $~~1,222,548.77~~968,000.

4

**Total Projected Cash: $~~1,366,107~~1,283,107**

Classes 1 - 6 under this Plan consist of claims secured by liens and security interests against certain of the Debtor's assets.  The treatment of claims within such classes depends upon the circumstances of each such claim, including whether the claim is oversecured or undersecured, or whether the Debtor/Liquidating Trust and the creditor have entered into a settlement agreement governing the treatment of such creditor's secured claims.

Class 7 under this Plan consists of all priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7).  A number of proofs of claim have been filed by former employees of the Debtor asserting priority treatment for some or all of their respective alleged claims against the Debtor.  The total amount of such priority claims asserted against the Debtor equals $~~955,774.01~~972,924.01, but this is as a result of certain of such claimants not taking into account the statutory cap on priority wage claims, as set forth in section 507(a)(4) of the Bankruptcy Code.  Taking into account the statutory cap, the total amount of *asserted* priority wage claims is estimated to be $~~260,450.00~~277,600.00.  The Debtor is evaluating whether and to what extent such claimants are entitled to priority treatment at all and reserves its rights to object to such claims with respect to amounts and priorities.  Attached ~~hereto~~ as **Exhibit A** to the Disclosure Statement is a list of all such asserted priority wage claims.  To the extent any such claims are allowed as priority claims, they shall be paid in full, in cash, on the later of the Effective Date and the date such claims are deemed allowed by the Bankruptcy Court.

Class 8 under this Plan consists of all non-priority general unsecured claims.  The total amount of claims in class 8 will depend upon a number of factors, including whether any creditors holding claims in classes 1 - 6 have claims that are not satisfied in full pursuant to a liquidation of such creditors' collateral, and the extent of allowed class 7 claims.  Class 8 will receive a pro rata share of any unencumbered cash remaining in the Liquidating Trust after the payment in full of all allowed administrative claims (including all post-Effective Date fees and costs, including without limitation, the fees and costs of the Liquidating Trust), and all allowed priority claims.

Class 9 under this Plan consists of equity interests in the Debtor.  It is not anticipated that there will be any unencumbered funds available to make any distribution to equity interest

holders.  To the extent any funds remain after the payment of all allowed claims, including allowed administrative claims, post-confirmation and post-Effective Date fees and expenses of the Liquidating Trust, they shall be distributed to equity interest holders in accordance with the Debtor's corporate governance documents, less any fees and costs of making such distributions. Class 9 is unimpaired and is deemed to have accepted this Plan.

After taking into account the treatment of holders of secured claims in classes 1 – 6, the Debtor anticipates that it will have the following approximate unencumbered cash available for the payment of pre-Effective Date allowed administrative claims, priority claims, and general unsecured claims:

Available Intangible IP Cash: $~~1,000,000~~748,000[2]

Moov Carve-Out: $10,000

Carve-Out from sale of Equipment: ~~Potentially up to~~ $100,000

**Total: $~~1,010,000 - $1,110,000~~858,000**

Projected pre-Effective Date allowed administrative claims: $~~500,000~~430,000 - $~~600,000~~455,000

Projected allowed priority wage claims: $0.00 - $~~260,450.00~~277,600.00

Projected allowed priority tax claims: $0.00 - $27,163.78

Estimated Cash available for Liquidating Trust/General Unsecured Creditors: $~~122,386.22~~98,236.22 - $~~610,000~~428,000

**III.CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THIS PLAN**

**A.    What Creditors and Interest Holders Will Receive Under this Plan**

---

[2] ~~As set forth above, as of the date of the filing of this Plan, Available Intangible IP Cash equals approximately $1,825,973.77.~~ It is anticipated that ~~if the Court grants the Debtor's second cash collateral motion and the expenses requested to be paid are paid,~~ the total amount of Available Intangible IP Cash as of ~~March 1~~July 31, 2026~~,~~ will be approximately $~~1,222,548.77~~968,000. After taking into account the allowed class 1 and class 2 secured claims (totaling approximately $219,339.78, not including accrued interest), Available Intangible IP Cash is estimated to equal approximately $~~1,000,000~~748,000.

6

As required by the Bankruptcy Code, this Plan classifies claims and interests in various classes according to their right to priority. This Plan states whether each class of claims or interests is impaired or unimpaired. This Plan provides the treatment each class will receive.

**B.  Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has <u>not</u> placed the following claims in a class:

### 1.  Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code requires that all administrative claims be paid on the Effective Date unless a particular claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(2) administrative claims and their treatment under this Plan:

7

| Name | Amount Owed | Treatment |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the Effective Date |
| Levene, Neale, Bender, Yoo & Golubchik L.L.P. ("LNBYG"), bankruptcy counsel to the Debtor | $250,000 (est.), which would be in addition to any post-petition fees and expenses paid to LNBYG by the Debtor | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| Sherwood Partners, Inc. ("Sherwood"), financial advisor to the Debtor | $150,000 (est.), which would be in addition to any post-petition fees and expenses paid to Sherwood by the Debtor | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| Mincin Law, PLLC, counsel to the Official Committee of Unsecured Creditors | $30,000 (est.), which would be in addition to any post-petition fees and expenses paid to Mincin Law, PLLC by the Debtor | Paid in full on the later of the Effective Date and the date the Bankruptcy Court enters an order allowing such fees and expenses |
| Post-Petition Non-Professional Fee Administrative Claims | $~~70,000~~0 - $~~170,000 (approx.) of post-petition accounts payable accrued in the ordinary course of the Debtor's business, depending on whether and to what extent the Debtor will be required to pay for clean-up costs and the removal of any chemicals from the Debtor's facility in Carlsbad, California.~~25,000 (to the extent not otherwise included in the Debtor's cash collateral budgets) | Paid in full in the ordinary course of business or following the entry of an order of the Bankruptcy Court if a dispute exists between the Debtor/Liquidating Trust and the administrative claim holder |
| **TOTAL** | $~~500,000~~430,000 - $~~600,000~~455,000 | Paid in the manner described above |

8

<u>Bankruptcy Court Approval of Fees Required:</u>

The Bankruptcy Court must approve all professional fees and expenses listed in this chart before they may be paid. For all professional fees and expenses, the professional in question must file and serve a properly noticed fee application and the Bankruptcy Court must rule on the application. Only the amount of fees and expenses allowed by the Bankruptcy Court will be required to be paid under this Plan. The administrative claim amounts set forth above simply represent the Debtor's best estimate as to the amount of allowed administrative claims in this case. The actual administrative claims may be higher or lower. Much of whether the actual administrative claims described above for professionals will be higher will be dependent upon whether the Debtor is required to engage in any substantial litigation regarding the confirmation of this Plan and/or objecting to claims. To the extent the Debtor is required to engage in any such substantial litigation, the Debtor's professionals are likely to incur professional fees and expenses in excess (and possibly substantially in excess) of the figures set forth above. By voting to accept this Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims. Similarly, professionals who have been employed in this case are not being deemed to have agreed that the figures contained herein represent any ceiling on the amount of fees and expenses that they have incurred or are entitled to seek to be paid pursuant to Bankruptcy Court order as such fees and expenses are just estimates provided at the time of the preparation of this Plan.

### 2. Priority Tax Claims

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code. Section 1129(a)(9)(C) of the Bankruptcy Code requires that each holder of such a Section 507(a)(8) priority tax claim receive regular installment payments of a total value, as of the Effective Date, equal to the allowed amount of such allowed tax claims over a period ending not later than five years after the Petition Date. All allowed Section 507(a)(8) priority tax claims will be paid the full amount of such claims within

ten (10) business days of the Effective Date.  The following priority tax claims have been filed

in this case, and the Debtor reserves the right to object to the allowance of such claims:

| **Claimant** | **Claim No.** | **Asserted Priority Claim Amount** | **Notes** |
| --- | --- | --- | --- |
| San Diego County Treasurer-Tax Collector | 5-1 | $67.11 | N/A |
| Internal Revenue Service | 19-2 | $400.00 | Estimated Claim |
| Franchise Tax Board | 30 | $1,709.69 | |
| California Dept. of Tax and Fee Administration | 57 | $24,986.98 | |
| **TOTAL** | | **$27,163.78** | |

11

**C.      Classified Claims and Interests**

**1.  Class of Secured Claims**

Secured claims are claims secured by liens on property of the estate.  The following chart sets forth the description and treatment of the Debtor's secured claims:

12

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 1 | The secured claim of the United States Small Business Administration ("SBA"). Loan No. ending in 7807, dated June 3, 2020, in the amount of $150,000.00 Asserted claim amount: $147,601.78 (Proof of Claim No. 32-1) Lien position/collateral: First lien position/All tangible and intangible personal property of the Debtor | Impaired; allowed claims in this class are entitled to vote on this Plan. | Within ten (10) business days of the Effective Date of this Plan, the SBA shall receive a payment from the Available Intangible IP Cash in the amount ~~of $147,601.78 plus any accrued interest~~equal to the remaining amount of the SBA's allowed class 1 claim (with interest calculated in accordance with the SBA loan documents) in full settlement and satisfaction of the SBA's allowed class 1 claim. |

13

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 2 | The secured claim of Rowen Innovations, LLC ("Rowen") <br><br> Scheduled Claim Amount: $71,738 (Schedule D of the Debtor's Schedules of Assets and Liabilities) <br><br> Lien position/collateral: Second lien position on intangible assets and last position on tangible assets | Impaired; allowed claims in this class are entitled to vote on this Plan. | Within ten (10) business days of the Effective Date of this Plan, Rowen shall receive a payment from the Available Intangible IP Cash in the amount of $71,738, plus accrued interest (with interest calculated in accordance with the Rowen loan documents) in full settlement and satisfaction of Rowen's allowed class 2 claim. |

15

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 3 | The secured claim of John Douglas Pierce ("Mr. Pierce")<br><br>Asserted claim amount: $290,532.00, of which $105,000 is asserted as a secured claim (Proof of Claim No. 47-1)<br><br>Lien position/collateral: Second lien position on only tangible assets and proceeds thereof | Impaired; allowed claim in this class is entitled to vote on this Plan. | Mr. Pierce's class 3 claim is comprised of the portion of Proof of Claim No. 47-1 that is asserted as a secured claim, in the amount of $105,000 (the "Pierce Secured Claim"). The Debtor and Mr. Pierce, among other parties, entered into that certain *Amended Stipulation Between Debtor, John Douglas Pierce, RAF Pacifica Group-Real Estate Fund II, LLC and NextMed III Owner, LLC Regarding Carve-Out Of Proceeds Of Sale Of Tangible Personal Property* (the "Amended Carve-Out Stipulation") (Doc 215253), pursuant to which Mr. Pierce and the Debtor agreed to the treatment of the Pierce Secured Claim as set forth in the Amended Carve-Out Stipulation, which provides that Mr. Pierce will receive $105,000 in full settlement and satisfaction of the Pierce Secured Claim, with Mr. Pierce waiving any right to accrued or additional interest, fees or costs on account of the Pierce Secured Claim, provided, however, that nothing set forth in the Amended Carve-Out Stipulation or this Plan shall reduce the general unsecured claim of Mr. Pierce. Pursuant to the Amended Carve-Out Stipulation, the source of payment for the Pierce Secured Claim shall be the "Secured Potential Tangible Personal Property Sale Proceeds" (as defined in the Amended Carve-Out Stipulation and described in the Disclosure Statement). As and to the extent the Secured Potential Tangible Personal Property Sale Proceeds are not sufficient to pay $105,000 to Mr. Pierce, the Debtor will fund the shortfall using the Debtor's Remaining Cash |

17

| | | | Collateral (defined above).    The general unsecured claims of Mr. Pierce are classified in class 8 of this Plan. <br><br> The Debtor will pay the Pierce Secured Claim as set forth above within ten (10) business days of the Effective Date. |
|---|---|---|---|

18

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 4 | The secured claim of RAF Pacifica Group-Real Estate Fund II, LLC ("RAF")<br><br>Asserted claim amount: $613,711.87 (the "RAF Secured Claim")<br><br>(Proof of Claim No. 48-1)<br><br>Lien position/collateral: Third or Fourth lien position on all property subject to enforcement of a money judgment against the Debtor to which a judgment lien on property may attach under section 697.530 of the California Code of Civil Procedure, which does not include any intangible intellectual property or the proceeds thereof) | Impaired; allowed claim in this class is entitled to vote on this Plan. | The Debtor and RAF, among other parties, entered into the Amended Carve-Out Stipulation pursuant to which RAF and the Debtor agreed to the treatment of the RAF Secured Claim as set forth in the Amended Carve-Out Stipulation, which provides that RAF will receive a pro rata distribution (pro rated as between RAF and the holder of the class 5 claim described below) of the remaining Secured Potential Tangible Personal Property Sale Proceeds as set forth in the Amended Carve-Out Stipulation.<br><br>RAF will also receive a pro rata distribution of any Remaining Cash Collateral (subject to any payments from the Remaining Cash Collateral required to be paid to Mr. Pierce on account of his class 3 claim) (pro rated as between RAF and the holder of the class 5 claim described below).<br><br>Any unpaid portion of the RAF Secured Claim shall be deemed to be a general unsecured deficiency claim and is classified as a class 8 claim under this Plan.<br><br>The Debtor will make the pro rated distribution as set forth above to RAF within ten (10) business days of the Effective Date. |

20

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 5 | The secured claim of NextMed III Owner, LLC ("NextMed")<br><br>Asserted claim amount: $648,242.30 (the "NextMed Secured Claim")<br><br>(Proof of Claim No. 52-1)<br><br>Lien position/collateral: Third or Fourth lien position on all of the Debtor's cash, inventory, equipment and all accounts and in all proceeds of the foregoing assets (but not intangible intellectual property or the proceeds thereof) | Impaired; allowed claim in this class is entitled to vote on this Plan. | The Debtor and NextMed, among other parties, entered into the Amended Carve-Out Stipulation pursuant to which NextMed and the Debtor agreed to the treatment of the NextMed Secured Claim as set forth in the Amended Carve-Out Stipulation, which provides that NextMed will receive a pro rata distribution (pro rated as between NextMed and the holder of the class 4 claim described above)  of the remaining Secured Potential Tangible Personal Property Sale Proceeds as set forth in the Amended Carve-Out Stipulation.<br><br>NextMed will also receive a pro rata distribution of any Remaining Cash Collateral (subject to any payments from the Remaining Cash Collateral required to Mr. Pierce on account of his class 3 claim) (pro rated as between NextMed and the holder of the class 4 claim described above).<br><br>Any unpaid portion of the NextMed Secured Claim shall be deemed to be a general unsecured deficiency claim and is classified as a class 8 claim under this Plan.<br><br>The Debtor will make the pro rated distribution as set forth above to NextMed within ten (10) business days of the Effective Date. |

22

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 6 | The secured claim IPFS Corporation ("IPFS") <br><br> Asserted claim amount: $2,083.60 <br><br> (Proof of Claim No. 39-1) <br><br> Collateral: IPFS asserts that its claim is secured by "unearned premium of financed insurance policy." | Not impaired; allowed claim in this class is not entitled to vote on this Plan. | On the Effective Date, any remaining premium required to be paid, up to the amount of the asserted claim amount of $2,083.60, shall be paid in full settlement and satisfaction of IPFS's class 6 claim. |

24

Additionally, the following parties have recorded UCC-1 financing statements which remain active but where the Debtor believes the underlying obligations being secured by such liens have been satisfied:

    a. BBT Commercial Equipment Capital Corp. – The Debtor's books and records show a balance of $0.00 owed.

    b. Crestmark Equipment Finance, Inc. – The Debtor's books and records show a balance of $835 owed, after last payment of $4,175 was made in June 2018. The Debtor believes that this obligation has been satisfied though there remains an active recorded UCC-1 financing statement of record.

    c. Brevet Direct Lending (referred to in the UCC-1 Financing search as "LLC") – The Debtor's books and records show a balance of $0.00 owed. Brevet Direct Lending financed the Debtor's employee retention credits in the amount of $1,033,142.93 in July 2022, and received a payment from the Debtor in the amount of $1,192.088 in February 2023 in satisfaction of such debt.

Such alleged liens/claims are not classified under this Plan because the Debtor does not believe that such liens/claims exist. On the Effective Date, such liens and claims shall be deemed to be extinguished and of no further force or effect.

**2. Classes of Priority Unsecured Claims**

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Bankruptcy Code requires that each holder of such a claim receives cash on the Effective Date equal to the allowed amount of such claim.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 7 | Claims entitled to priority pursuant to Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7). A number of proofs of claim have been filed by former employees of the Debtor asserting priority treatment for some or all of their respective alleged claims against the Debtor. The total amount of such priority claims asserted against the Debtor equals $955,774.01972,924.01, but this is as a result of certain of such claimants not taking into account the statutory cap on priority wage claims, as set forth in section 507(a)(4) of the Bankruptcy Code. Taking into account the statutory cap, the total amount of asserted priority wage claims is estimated to be $260,450.00277,600.00. The Debtor is evaluating whether and to what extent such claimants are entitled to priority treatment at all, and reserves its rights to object to such claims with respect to amounts and priorities. Attached hereto as | Not impaired; allowed claims in this class are not entitled to vote on this Plan. | To the extent any such claims are allowed, they shall be paid in full, in cash, on the later of the Effective Date and the date such claims are deemed allowed by the Bankruptcy Court. |

| | **Exhibit A** to the Disclosure Statement is a list of all such asserted priority wage claims. | | |
| --- | --- | --- | --- |

### 3. Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a). The following chart identifies this Plan's treatment of the classes containing the Debtor's non-priority general unsecured claims:

28

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 8 | All non-priority general unsecured claims.

The Debtor scheduled a total of $17,722,362.43 of general unsecured debt as set forth on Schedule F of the Debtor's Schedules of Assets and Liabilities, but based on claims filed against the estate, it is possible that the total amount of allowed general unsecured claims against the estate exceeds $30,000,000.

However, the actual total amount of class 8 claims will depend upon a number of factors, including whether any creditors holding claims in classes 1 - 6 have claims that are not satisfied in full pursuant to a liquidation of such creditors' collateral, and whether any creditors asserting class 7 priority claims are reclassified as class 8 claimants.

If the total allowed amount of general unsecured claims is ultimately more than what the Debtor | Impaired; allowed claims in this class are entitled to vote on this Plan. | In full settlement and satisfaction of allowed class 8 claims, each holder of an allowed class 8 claim will receive a pro rata share of the unencumbered cash remaining in the Liquidating Trust after the payment of all allowed administrative claims (including post-Effective Date administrative claims and fees and expenses, including the fees and costs of the Liquidating Trust), and all allowed priority claims.

To the extent funds are available, the Liquidating Trustee will make distributions to holders of allowed class 8 claims on account of such claims at least annually, up to the allowed amount of such class 8 claims.

The Debtor estimates that the cash available for the Liquidating Trust/class 8 after taking into account allowed pre-Effective Date administrative claims, and allowed priority claims will be in the range of $~~122,386.22~~98,236.22 - $~~610,000~~428,000, depending upon whether asserted priority claims are allowed as asserted, subject to applicable statutory caps~~, and depending upon whether the Debtor will be required to incur additional clean-up and other costs related to the removal of chemicals from the Debtor's facility in Carlsbad, California~~.

The ultimate amount distributed to holders of allowed class 8 claims will depend upon a number of factors, including whether and to |

scheduled, they may significantly increase the total amount of allowed class 8 claims, and therefore significantly affect the percentage recovery received by holders of allowed class 8 claims.

At this time the Debtor cannot estimate the range of recovery for holders of allowed class 8 claims.

The assets available for recovery for general unsecured creditors, subject to paying in full all allowed administrative claims (including all post-Effective Date fees and costs, including without limitation, the fees and costs of the Liquidating Trust) and priority claims, consist primarily of: (i) any Remaining Intangible IP Cash, the Carve-Out (if any), and the Moov Carve-Out (if any), after the payment of all allowed administrative claims (including the fees and expenses of the Liquidating Trust), and class 1 – 7 claims as set forth above, and (ii) any proceeds/recoveries from claims and causes of action of the estate after the

what extent the Liquidating Trust determines to use available funds (subject to the cap described hereinbelow) to pursue claims and causes of action against the estate, and whether and to what extent the Liquidating Trust recovers money in connection with claims and causes of action against the estate. The percentage recovery for holders of allowed class 8 claims will depend on such factors as well as the ultimate total amount of allowed class 8 claims.

30

| | payment of all allowed administrative claims (including the fees and expenses of the Liquidating Trust), and class 1 – 7 claims as set forth above.

Much of the actual recovery for holders of allowed class 8 claims will depend upon the Debtor's or the Liquidating Trustee's ability to liquidate non-cash assets (if any).

A detailed claims chart showing all claims (including class 8 claims) which were scheduled by the Debtor and all general unsecured proofs of claim which have been filed against the Debtor is attached ~~hereto~~ as **Exhibit B** to the Disclosure Statement (the "Claims Chart"). | | |

31

### 4. Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtor. Equity interests in the Debtor are classified as class 9 interests and will remain intact and holders of equity interests shall be deemed to have voted to accept this Plan and are not entitled to vote on this Plan. It is not anticipated that there will be any unencumbered funds available to make any distribution to equity interest holders. To the extent any funds remain after the payment of all allowed claims, including allowed administrative claims, post-confirmation and post-Effective Date fees and expenses of the Liquidating Trust, they shall be distributed to equity interest holders in accordance with the Debtor's corporate governance documents, less any fees and costs of making such distributions. Class 9 is unimpaired and is deemed to have accepted this Plan.

## IV. MEANS OF EFFECTUATING THIS PLAN AND IMPLEMENTATION OF THIS PLAN

### A. The Liquidating Trust

**1. Execution of Liquidating Trust Agreement.** On the Effective Date, a Liquidating Trust Agreement in a form approved by the Bankruptcy Court at the Plan Confirmation Hearing shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the beneficial interests therein, which shall be for the benefit of all creditors entitled to receive distributions under this Plan from the Liquidating Trust. The treatment of all claim holders will occur in the manner described above. All cash distributions to be made on or near the Effective Date will be funded from the Cash Collateral, the Remaining Intangible IP Cash, the Carve-Out (if any), the Moov Carve-Out, and the Potential Tangible Personal Property Sale Proceeds, all as provided in this Plan, either by the Debtor, or, if the Liquidating Trust has been established, by the Liquidating Trust.

**2. Purpose of the Liquidating Trust.** The Liquidating Trust shall be established and maintained for the purpose set forth in the Liquidating Trust Agreement, including for the purpose of collecting, distributing and liquidating all of the funds and property assigned to the Liquidating

32

Trust and pursuing claims and causes of action assigned to the Liquidating Trust under this Plan for the benefit of the creditors entitled to receive distributions under this Plan from the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and this Plan. The Liquidating Trust shall have no objective or authority to continue or to engage in the conduct of any trade or business.

3.      **Transfer of Property to the Liquidating Trust.**

a.      On the Effective Date, all right, title and interest of the Debtor and the bankruptcy estate in property and assets of any kind, to the extent such property hasn't previously been sold (the "Trust Property") shall be, and shall be deemed to be, irrevocably transferred, absolutely assigned, conveyed, set over and delivered to the Liquidating Trust, in trust to and in trust for the benefit of the beneficiaries of the Liquidating Trust for the uses and purposes stated herein and in the Liquidating Trust Agreement, free and clear of any and all liens, claims, encumbrances and interests (legal, beneficial or otherwise) of all other entities to the maximum extent contemplated by and permissible under Section 1141(c) of the Bankruptcy Code, except as set forth in the Plan Confirmation Order or this Plan. To the extent that certain assets of the Debtor's or the Debtor's bankruptcy estate (and their right, title and interest in such assets), because of their nature or because they will accrue subsequent to the Effective Date, cannot be irrevocably transferred, absolutely assigned, conveyed, set over or delivered to the Liquidating Trust on the Effective Date, such assets shall be deemed assigned, set over, transferred and conveyed to the Liquidating Trust as soon as practical after the Effective Date. The Liquidating Trustee is hereby granted the Power of Attorney to execute documents on behalf of the Debtor, as reasonably determined by the Liquidating Trustee (in recordable form where necessary or appropriate) to vest or perfect in or confirm to the Liquidating Trustee title to and possession of the Trust Property.

b.      On or after the Effective Date, the Liquidating Trustee shall continue as a plaintiff in all litigation or causes of action (on behalf of beneficiaries of the Liquidating Trust) in which the Debtor was plaintiff prior to the Effective Date. All recoveries and proceeds arising from litigation and causes of action shall be deemed assigned, set over, transferred and conveyed

33

to the Liquidating Trust upon receipt thereof.  All fees and costs of the Liquidating Trust (and agents thereof) arising from or relating to pursuing litigation or causes of action or other services performed at the request of the Liquidating Trustee on behalf of the Liquidating Trust shall be paid as a first priority in right of distribution from the Liquidating Trust, subject to a cap of $75,000, provided, however, that the Liquidating Trustee may request from the Bankruptcy Court upon a showing of cause an increase in such cap.

c.     The transfer of assets of the estate to the Liquidating Trust shall be made for the benefit of the beneficiaries of the Liquidating Trust, but only to the extent the beneficiaries are entitled to distributions under this Plan.

d.     For all federal, state and local income tax purposes, the Debtor, the beneficiaries of the Liquidating Trust, and the Liquidating Trustee shall treat the transfer of the Trust Property to the Liquidating Trust as a transfer of the Trust Property by the Debtor to the beneficiaries of the Liquidating Trust in satisfaction of their class 8 claims under this Plan, followed by a transfer of the Trust Property by the beneficiaries of the Liquidating Trust to the Liquidating Trust in exchange for their beneficial interests in the Liquidating Trust.  Thus, the beneficiaries of the Liquidating Trust shall be treated as the grantors and owners of the Liquidating Trust.

4.     **Securities Exempt.**  Under Section 1145 of the Bankruptcy Code, the issuance of beneficial interests in the Liquidating Trust to the beneficiaries of the Liquidating Trust under this Plan, to the extent such interests are deemed to be "securities," shall be exempt from registration under the Securities Act of 1933, as amended, and all applicable state and local laws requiring registration of securities.  If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities and Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file necessary periodic reports with the Securities and Exchange Commission.

5.     **Governance of Liquidating Trust.**  The Liquidating Trust shall be governed by

34

the Liquidating Trustee in accordance with the Liquidating Trust Agreement and consistent with this Plan.  A proposed form of Liquidating Trust Agreement ~~will be filed with the Court prior to the hearing for the Court to consider approval of the~~ is attached as **Exhibit C** to the Disclosure Statement.

6. **Designation of Liquidating Trustee.**  The Debtor is in the process of identifying a Liquidating Trustee ~~shall be identified at least fourteen (14) days prior to the Plan Confirmation Hearing.~~ and believes it will be able to identify at least one potential candidate by the time of the hearing on the Disclosure Statement.  The designation of the Liquidating Trustee shall be effective on the Effective Date without the need for a further order of the Bankruptcy Court.  The duties, obligations, and responsibilities of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement and shall include, but not be limited to, the following: (a) oversee the preservation, holding, management and maximization of all Trust Property and distribute them to the beneficiaries of the Liquidating Trust; (b) take or not take those actions that the Liquidating Trustee in his business discretion believes to be in accordance with the best interests of the beneficiaries of the Liquidating Trust and which actions or inactions are consistent with this Plan. The Liquidating Trustee's responsibilities, duties and obligations are solely to the beneficiaries of the Liquidating Trust.  The Liquidating Trustee shall have an independent right and standing to request relief from the Bankruptcy Court that the Liquidating Trustee believes to be in accordance with the best interests of the beneficiaries of the Liquidating Trust. The Liquidating Trustee shall be deemed to be a "party in interest" within the meaning of Section 1109(b) of the Bankruptcy Code and a representative of the Debtor's bankruptcy estate under Bankruptcy Code section 1123(b)(3) and 1129(a)(5).

7. **Rights, Powers and Privileges of the Liquidating Trustee.**  The Liquidating Trustee shall have all of the rights, powers and privileges expressly provided in the Liquidating Trust Agreement and this Plan.  The Liquidating Trustee shall have the power to take the actions granted in the Liquidating Trust Agreement and any powers reasonably incidental thereto, that the Liquidating Trustee, in his reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Liquidating Trust, unless otherwise specifically limited or restricted by this Plan

or the Liquidating Trust Agreement.

**8.     Agents and Professionals.**  The Liquidating Trustee shall consult with and retain attorneys, accountants, appraisers, or other parties deemed by the Liquidating Trustee to have qualifications necessary to assist in the proper administration of the Liquidating Trust.  The Liquidating Trustee may pay the reasonable salaries, fees and expenses of such persons (including himself), including contingency fees, out of the Trust Property in the ordinary course.

**9.     Investment and Safekeeping of Trust Property.**  All monies and other Trust Property received by the Liquidating Trustee shall, until distributed or paid over as provided in the Liquidating Trust Agreement and this Plan, be held in the Liquidating Trust for the benefit of the beneficiaries of the Liquidating Trust, but need not be segregated from other Trust Property, unless and to the extent required by law or this Plan.  The Liquidating Trustee shall be under no liability for interest or producing income on any moneys received by the Liquidating Trust and held for distribution or payment to the beneficiaries of the Liquidating Trust, except as such interest shall actually be received by the Liquidating Trustee.  Investments of any moneys held by the Liquidating Trustee shall be administered in view of the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs.  For the removal of doubt, the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Trust Property and to further the liquidating purpose of the Liquidating Trust, are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as treasury bills.

**10.     Limitations on the Liquidating Trustee and Payment of Fees.**  The Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust or beneficiaries of the Liquidating Trust: (i) enter into or engage in any trade or business, and no part of the Trust Property or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (ii) except as provided in the Liquidating Trust Agreement, reinvest any Trust Property.  The Liquidating Trustee may invest funds held in the Liquidating Trust consistent with the requirements of the Liquidating Trust Agreement and the

36

prudent person standard of care, provided that the Liquidating Trustee shall have no liability in the event of insolvency of any financial institution in which he/she has invested any funds of the Liquidating Trust to the extent such institution is on the list of approved depositories by the United States Trustee.  The Liquidating Trustee shall hold, collect, conserve, protect and administer the Liquidating Trust in accordance with the provisions of the Liquidating Trust Agreement and this Plan, and pay and distribute amounts as set forth herein for the purposes set forth in the Liquidating Trust Agreement.  Any determination by the Liquidating Trustee as to what actions are in the best interests of the Liquidating Trust shall be determinative.

11.    **Bankruptcy Court Approval of Trustee Actions.**  Except as provided in this Plan or otherwise specified in the Liquidating Trust Agreement, the Liquidating Trustee need not obtain the approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder or account to the Bankruptcy Court.  The Liquidating Trustee shall exercise his business judgment for the benefit of the beneficiaries of the Liquidating Trust in order to maximize the value of the Trust Property and distributions, giving due regard to the cost, risk, and delay of any course of action.  Notwithstanding the foregoing, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question or questions regarding which the Liquidating Trustee may desire to have explicit direction and/or approval of the Bankruptcy Court with respect to the Trust Property, the Liquidating Trust, the Liquidating Trust Agreement, this Plan, or the Debtor.  The Liquidating Trustee also shall have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Trust Property free and clear of any and all liens, claims and encumbrances.

12.    **Valuation of Trust Property.**  The Trustee shall make best efforts to understand and apprise the Trust Beneficiaries of the fair market value of the Trust Property.  The valuation shall be used consistently by all parties (including the Trustee and Trust Beneficiaries) for all federal income tax purposes.  Any dispute regarding the valuation of Trust Property shall be resolved by the Bankruptcy Court.

13.    **Distributions.**  The Liquidating Trustee shall distribute at least annually to the beneficiaries of the Liquidating Trust all net cash income plus all net cash proceeds from the

37

liquidation of Trust Property; provided, however, that the Liquidating Trustee shall maintain at all times adequate cash or marketable securities as reserves, including the Disputed Claim Reserve (defined below) as may be reasonably necessary to maintain the value of the Trust Property, satisfy projected expenses and meet claims and contingent liabilities of the Liquidating Trust.  The Liquidating Trustee may request the Bankruptcy Court to resolve any dispute or to rule upon any inquiry regarding the adequacy of reserves.

**14.   Pro Rata Share of Distributions.**  Each of the beneficiaries of the Liquidating Trust shall receive its share or pro rata share (as applicable) of any and all distributions made by the Liquidating Trustee.  The Liquidating Trustee may withhold from amounts distributable to any beneficiary of the Liquidating Trust any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

**15.   Delivery of Distributions.**  All distributions to be made to the beneficiaries of the Liquidating Trust shall be made by the Liquidating Trustee in accordance with the terms of this Plan.

**16.   Undelivered Property.**  Any beneficiary of the Liquidating Trust that fails to claim any cash within ninety (90) days from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under this Plan, and shall not be subject to the unclaimed property or escheat laws of any governmental unit. Upon forfeiture, such cash (including interest thereon) shall be made available for re-distribution to all other beneficiaries of the Liquidating Trust. Beneficiaries of the Liquidating Trust who fail to claim cash shall forfeit their rights thereto and shall have no claim whatsoever against the Liquidating Trust or the Liquidating Trustee, as applicable, or any of the other beneficiaries of the Liquidating Trust to whom distributions are made under this Plan; provided, however, that the Liquidating Trustee may, but is not required to, undertake reasonable efforts, in his business judgment, to locate beneficiaries of the Liquidating Trust whose distributions are returned as undeliverable or whose checks are not timely cashed.

**17.   De Minimis Distributions.**  No distribution shall be required to be made to any

beneficiary of the Liquidating Trust under this Plan and the Liquidating Trust Agreement to any beneficiary unless such distribution will amount to at least $25.00, unless the Liquidating Trustee determines otherwise in his sole discretion. Any beneficiary of the Liquidating Trust on account of which the amount of cash to be distributed pursuant to any distribution from the Liquidating Trust is less than $25.00 shall be deemed to have no claim for such distribution against the Debtor, the Liquidating Trust, the Liquidating Trustee or the Trust Property.

18.   **Payments Limited to Trust Property.**   All payments to be made by the Liquidating Trustee to or for the benefit of any beneficiary of the Liquidating Trust shall be made only to the extent that the Liquidating Trustee has sufficient reserves to make such payments in accordance with the Liquidating Trust Agreement and this Plan.   Each beneficiary of the Liquidating Trust shall have recourse only to the Trust Property for distribution under the Liquidating Trust Agreement and this Plan.

19.   **Fees and Expenses.**   Subject to the limitations set forth in the Liquidating Trust Agreement and in this Plan, the Liquidating Trustee shall pay and/or reserve for the operating and administrative expenses of the Liquidating Trust before approving distributions to or for the benefit of the beneficiaries of the Liquidating Trust.   The Liquidating Trustee shall satisfy any fees and expenses of the Liquidating Trust with Trust Property.

20.   **Priority of Distributions.**   Any recovery by the Liquidating Trust on account of the Trust Property shall be applied in the following order:

a.   First, to pay and/or reserve for any unpaid or reasonably anticipated costs and expenses of the Liquidating Trust, including, without limitation, reasonable professional fees and expenses and court costs;

b.   Second, distributed to the beneficiaries of the Liquidating Trust in accordance with the Liquidating Trust Agreement and this Plan.

21.   **Compliance with Laws.**   Any and all distributions of Trust Property shall be in compliance with applicable laws, including, but not limited to, applicable federal and state securities laws.

22.   **Identification of the Beneficiaries of the Liquidating Trust.**   Each of the

39

beneficiaries of the Liquidating Trust shall be recorded and set forth in a schedule (the "Beneficiary Schedule") maintained by the Liquidating Trustee.  In order to determine the actual names and addresses of the beneficiaries of the Liquidating Trust, the Liquidating Trustee may either (i) rely upon the Beneficiary Schedule, or (ii) deliver a notice to the beneficiaries of the Liquidating Trust.  Such notice will include a form for each beneficiary of the Liquidating Trust to complete in order to be properly registered as a beneficiary of the Liquidating Trust and be eligible for distributions under the Liquidating Trust Agreement and this Plan.

23.    **Beneficial Interest Only**.  The ownership of a beneficial interest in the Liquidating Trust shall not entitle any beneficiary of the Liquidating Trust or the Debtor to any title in or to the Trust Property or to any right to call for a partition or division of such Trust Property or to require an accounting, except as specifically provided in the Liquidating Trust Agreement.

24.    **Ownership of Beneficial Interests Hereunder**.  Subject to the requirements and limitations of the Liquidating Trust Agreement, each beneficiary of the Liquidating Trust shall own a beneficial interest in the Liquidating Trust equal in proportion to such Trust Beneficiary's pro rata share of its allowed claim in class 14 and class 15 under this Plan.

25.    **Evidence of Beneficial Interest**.  Ownership of a beneficial interest in the Liquidating Trust shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust by the Liquidating Trustee, including the Beneficiary Schedule.

26.    **Conflicting Claims**.  If any conflicting claims or demands are made or asserted with respect to a beneficial interest, the Liquidating Trustee shall be entitled, at his sole election, to refuse to comply with any such conflicting claims or demands. In so refusing, the Liquidating Trustee may elect to make no payment or distribution with respect to the beneficial interest represented by the claims or demands involved, or any part thereof, and the Liquidating Trustee shall refer such conflicting claims or demands to the Bankruptcy Court, which shall have exclusive jurisdiction over resolution of such conflicting claims or demands.  In so doing, the Liquidating Trustee shall not be or become liable to any party for his refusal to comply with any of such conflicting claims or demands. The Liquidating Trustee shall be entitled to refuse to act

40

until either (a) the rights of the adverse claimants have been adjudicated by a final order or (b) all differences have been resolved by a written agreement among all of such parties and the Liquidating Trustee, which agreement shall include a complete release of the Liquidating Trust and the Liquidating Trustee (the occurrence of either (a) or (b) being referred to as a "Dispute Resolution" in this paragraph). Until a Dispute Resolution is reached with respect to such conflicting claims or demands, the Liquidating Trustee shall hold in a segregated interest-bearing account with a United States financial institution any payments or distributions from the Liquidating Trust to be made with respect to the beneficial interest at issue.  Promptly after a Dispute Resolution is reached, the Liquidating Trustee shall transfer the payments and distributions, if any, held in the segregated account, together with any interest and income generated thereon, in accordance with the terms of such Dispute Resolution.

27. **Limitation on Transferability.**  It is understood and agreed that the beneficial interests in the Liquidating Trust shall not be assignable, other than by operation of law.

28. **Parties Dealing With the Liquidating Trustee.**  In the absence of actual knowledge to the contrary, any person dealing with the Liquidating Trust or the Liquidating Trustee shall be entitled to rely on the authority of the Liquidating Trustee or any of the Liquidating Trustee's agents or professionals to act in connection with the Trust Property.  No person or entity dealing with the Liquidating Trustee shall have any obligation to inquire into the validity, expediency or propriety of any transaction by the Liquidating Trustee or any agent or professional of the Liquidating Trustee.

29. **Trustee's Liability.**  In exercising the rights granted in the Liquidating Trust Agreement and this Plan, the Liquidating Trustee shall exercise his best judgment to the end that the affairs of the Liquidating Trust shall be properly managed and the interests of all the beneficiaries of the Liquidating Trust and the Debtor are safeguarded.

30. **Indemnity.**  The Liquidating Trustee and each of the Liquidating Trustee's respective agents, employees, professionals, attorneys, accountants, advisors and representatives (collectively, the "Liquidating Trust Indemnified Parties") shall be indemnified and held harmless by the Liquidating Trust, to the fullest extent permitted by law, solely from the Trust

41

Property for any losses, claims, damages, liabilities and expenses, including, without limitation, reasonable attorneys' fees, disbursements and related expenses that the Liquidating Trust Indemnified Parties may incur or to which the Liquidating Trust Indemnified Parties may become subject in connection with any action, suit, proceeding or investigation brought or threatened against one or more of the Liquidating Trust Indemnified Parties on account of the acts or omissions of a Liquidating Trust Indemnified Party solely in its capacity as such; provided, however, that the Liquidating Trust shall not be liable to indemnify any Liquidating Trust Indemnified Party for any act or omission constituting gross negligence, bad faith, fraud or willful misconduct by such Liquidating Trust Indemnified Party. Notwithstanding any provision herein to the contrary, the Liquidating Trust Indemnified Parties shall be entitled to obtain advances from the Liquidating Trust to cover their reasonable expenses of defending themselves in any action brought against them as a result of the acts or omissions, actual or alleged, of a Liquidating Trust Indemnified Party in its capacity as such. The foregoing indemnity in respect of any Liquidating Trust Indemnified Party shall survive the termination of such Liquidating Trust Indemnified Party from the capacity for which it is indemnified.

31.     **Initial Liquidating Trustee.**  The Liquidating Trustee shall be designated as set forth above.

32.     **Term of Service of the Liquidating Trustee.**  The Liquidating Trustee shall serve until (a) the completion of all the Liquidating Trustee's duties, responsibilities and obligations under the Liquidating Trust Agreement and this Plan; (b) termination of the Liquidating Trustee in accordance with the Liquidating Trust Agreement; or (c) the Liquidating Trustee's death, resignation or removal.

33.     **Removal of the Liquidating Trustee.**  The Liquidating Trustee may be removed only upon the entry of an order of the Bankruptcy Court that such removal is appropriate upon a showing of good cause.  The removal shall be effective upon the date specified in such entered order of the Bankruptcy Court, subject to the payment of all amounts owing to the Liquidating Trustee as of such date.  In the event of any such removal, the Liquidating Trustee shall submit to the Bankruptcy Court and any successor a full and complete accounting of monies and Trust

Property received, disbursed, and held during the term of office of that Liquidating Trustee.

34.    **Resignation of the Trustee.**  The Liquidating Trustee may resign at any time by filing with the Bankruptcy Court at least ninety (90) days written notice of his intention to do so. In the event of a resignation, the resigning Liquidating Trustee shall submit to the Bankruptcy Court a full and complete accounting of monies and Trust Property received, disbursed, and held during the term of office of that Liquidating Trustee.  The resignation shall be effective on the later to occur of:  (i) the date specified in the notice; or (ii) the appointment of a successor Liquidating Trustee by order of the Bankruptcy Court and the acceptance by such successor of such appointment; *provided*, that if a successor Liquidating Trustee is not appointed or does not accept his/her appointment within ninety (90) days following delivery of notice of resignation, the resigning Liquidating Trustee may petition the Bankruptcy Court for the appointment of a successor Liquidating Trustee.

35.    **Appointment of Successor Trustee.**  Upon the resignation, death, incapacity, or removal of the Liquidating Trustee, a successor Liquidating Trustee shall be appointed pursuant to an order of the Bankruptcy Court.  Any successor Liquidating Trustee so appointed shall consent to and accept in writing the terms of the Liquidating Trust Agreement and agree that the provisions of the Liquidating Trust Agreement and this Plan shall be binding upon and inure to the benefit of the successor Liquidating Trustee.

36.    **Powers and Duties of Successor Trustee.**  A successor Liquidating Trustee shall have all the rights, privileges, powers, and duties of his/her predecessor under the Agreement and this Plan.  Notwithstanding anything to the contrary herein, a removed or resigning Trustee shall, when requested in writing by the successor Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Trustee under the Trust Agreement all the estates, properties, rights, powers, and trusts of such predecessor Trustee.

37.    **Trust Continuance.**  The death, resignation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.  In the event that a successor Trustee is not appointed within thirty (30) days of when required under this Agreement, any Trust Beneficiary may apply

43

to the Bankruptcy Court for appointment of a successor Trustee upon notice to the Trustee.

38. **Compensation and Costs of Administration.** The Liquidating Trustee shall receive compensation for his services provided under the Liquidating Trust Agreement and such compensation terms shall be ~~identified by the Debtor at least fourteen (14) days prior to the Plan Confirmation Hearing.~~ negotiated between the Debtor and the proposed Liquidating Trustee. It is the Debtor's goal to negotiate terms that provide that compensation shall not exceed the sum of $500 per hour plus reimbursement of reasonable expenses, absent further order of the Court. As provided above, all fees and costs of the Liquidating Trust (and agents thereof) arising from or relating to pursuing litigation or causes of action or other services performed at the request of the Liquidating Trustee on behalf of the Liquidating Trust shall be paid as a first priority in right of distribution from the Liquidating Trust, subject to a cap of $75,000, provided, however, that the Liquidating Trustee may request from the Bankruptcy Court upon a showing of cause an increase in such cap.

39. **Annual Reporting and Filing Requirements.** The Liquidating Trustee shall file tax returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a) and any other applicable laws or regulations, and shall furnish information statements to the Trust Beneficiaries setting forth their allocable share of the income, loss, deduction or credit of the Trust and instruct them to report such items on their federal income tax returns. The Liquidating Trustee may withhold from amounts distributable to any Trust Beneficiary any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement. The Liquidating Trustee shall have the right to employ an accountant and any other professionals needed to assist the Liquidating Trustee for this purpose. The tax returns filed by the Liquidating Trustee shall report all Liquidating Trust earnings for the taxable year being reported. All of the ~~Trust's~~Liquidating Trust's income shall be treated as subject to tax on a current basis. For federal income tax purposes, items of income, gain, loss, and deduction of the Liquidating Trust will be allocated to the Trust Beneficiaries in a manner, to be determined by the Liquidating Trustee, that is consistent with applicable Treasury Regulations and that reflects the Trust Beneficiaries'

44

respective contributions and their respective interests in the interim and final distributions to be made by the Liquidating Trust, and such Trust Beneficiaries shall be responsible for the payment of taxes on a current basis that result from such allocations.

40.    **Confidentiality.**  The Liquidating Trustee shall, while serving as the Liquidating Trustee under the Liquidating Trust Agreement and for a period of twelve (12) months following the termination of the Liquidating Trust Agreement or following his removal or resignation thereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Trust Property relate or of which he/she has become aware in his capacity as Liquidating Trustee.

41.    **Maintenance of Records.**  The Liquidating Trustee shall maintain books and records containing a description of all property from time to time constituting the Trust Property and an accounting of all receipts and disbursements.  Upon sixty (60) days' prior written notice delivered to the Liquidating Trustee, such books and records shall be open to inspection by any beneficiary of the Liquidating Trust at any reasonable time during normal business hours; *provided* that, if so requested, such beneficiary of the Liquidating Trust shall have entered into a confidentiality agreement satisfactory in form and substance to the Liquidating Trustee.  The Liquidating Trustee shall furnish to any beneficiary of the Liquidating Trust upon written request an annual statement of receipts and disbursements of the Liquidating Trust.  Such books and records may be destroyed without further notice to parties or approval of the Bankruptcy Court five (5) years after the final report to the Bankruptcy Court has been rendered by the Trustee (unless such records and documents are necessary to fulfill the Trustee's obligations pursuant to the Liquidating Trust Agreement).

42.    **Duration of the Liquidating Trust.**  The Liquidating Trust shall become effective upon the Effective Date of this Plan.  Thereupon, the Liquidating Trust Agreement shall remain and continue in full force and effect until the Liquidating Trust is terminated in accordance with the provisions of the Liquidating Trust Agreement and this Plan.

43.    **Termination of the Liquidating Trust.**  The Liquidating Trust (and the duties, responsibilities and powers of the Liquidating Trustee) shall terminate on the later of (a) the date

which is five (5) years after the Effective Date; and (b) the date when full resolution of all Trust Property transferred to the Liquidating Trust has occurred, including distribution of the Trust Property and the net proceeds thereof, in accordance with this Plan and the Liquidating Trust Agreement; provided however, that, for cause, the Liquidating Trustee may seek earlier termination of the Liquidating Trust or an extension of the term of the Liquidating Trust upon application to the Bankruptcy Court.  The Liquidating Trustee shall not unduly prolong the duration of the Liquidating Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all claims that constitute Trust Property and to effect the distribution of the Trust Property to the beneficiaries of the Liquidating Trust in accordance with this Plan and terminate the Liquidating Trust as soon as practicable.  Upon such termination, except as otherwise set forth in this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be discharged from his position as Liquidating Trustee and from all further duties, obligations and responsibilities under this Plan.

44. **Continuance of the Liquidating Trust for Winding Up.**  After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until his duties have been fully performed, including, without limitation, such post-distribution tasks as necessary to windup the affairs of the Liquidating Trust.  After the termination of the Liquidating Trust, the Liquidating Trustee shall retain for a period of two (2) years the books, records, beneficiary lists, and certificates and other documents and files that have been created by the Liquidating Trustee.  At the Liquidating Trustee's discretion, all such records and documents may, but need not, be destroyed at any time after two (2) years from the completion and winding up of the affairs of the Liquidating Trust.  Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Liquidating Trust and final distribution of the Trust Property, the Liquidating Trustee shall have no further duties or obligations under this Plan or the Liquidating Trust Agreement.  The Liquidating Trustee may pay in advance from the Trust Property all costs of document management.

45. **Preservation of Privilege.**  In connection with the rights, claims, and causes of

46

action that constitute the Trust Property, any attorney-client privilege, work product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) transferred to the Liquidating Trust pursuant to the terms of this Plan or otherwise shall vest in the Liquidating Trustee and his representatives, and the Debtor and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of such privileges, as necessary.

46.    **No Bond.**  Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor) shall be exempt from giving any bond or other security in any jurisdiction.

47.    **Governing Law of the Liquidating Trust.**  The Liquidating Trust Agreement shall be governed by and construed in accordance with the laws of the State of California without regard to principles of conflicts of law.

48.    **Successors and Assigns.**  The Liquidating Trust Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns.

49.    **No Execution.**  All Trust Property shall be deemed *in custodia legis* until such times as the Trust Property has actually been paid to or for the benefit of a beneficiary of the Liquidating Trust, and no beneficiary of the Liquidating Trust or any other person can execute upon, garnish or attach the Trust Property or the Liquidating Trust in any manner or compel payment from the Liquidating Trust except by an order of the Bankruptcy Court that becomes a final order.  Payment will be solely governed by the Liquidating Trust Agreement and this Plan.

50.    **Intention to Establish Grantor Trust.**  The Liquidating Trust Agreement is intended to create a grantor trust for United States federal income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a grantor trust.

51.    **Amendment of the Liquidating Trust Agreement.**  The Liquidating Trust Agreement may be amended at any time by order of the Bankruptcy Court after motion by the

Liquidating Trustee.

**B.      Settlement Agreements**

Any settlement effectuated prior to the confirmation of this Plan, upon notice thereof to the Bankruptcy Court, shall be deemed incorporated into this Plan and the Plan Confirmation Order including provisions of such settlement that shall be deemed a settlement pursuant to section 1123(b)(3)(A) of the Bankruptcy Code.

**C.      Claims Administration and Prosecution and Plan Distributions.**

On and after the Effective Date, in addition to the rights provided to the Liquidating Trustee in the Liquidating Trust Agreement, the Liquidating Trustee shall have the power and authority to prosecute and resolve objections to disputed secured claims, disputed administrative expense claims, disputed priority tax claims, disputed priority non-tax claims and disputed general unsecured claims.  The Liquidating Trustee shall have the right, power and authority to retain and assert all defenses, rights of setoff, recoupment and counterclaims with respect to each of the foregoing.  The Liquidating Trustee shall also have the power and authority to hold, manage and distribute Plan distributions to the holders of allowed claims consistent with this Plan and the Liquidating Trust Agreement.

**D.      Books and Records of The Debtor**

Unless applicable non-bankruptcy law permits the distribution or destruction of certain of the Debtor's business records at an earlier date, or the Debtor or the Liquidating Trust obtains an order of the Bankruptcy Court providing otherwise, subject to the terms and conditions of the Liquidating Trust Agreement governing the books and records of the Liquidating Trust, the Liquidating Trustee shall have the responsibility of storing and maintaining the Debtor's books and records until one year after the Effective Date, after which time such books and records may be abandoned or destroyed without further Bankruptcy Court order, unless applicable non-bankruptcy law requires the retention and maintenance of any such books and records for a longer period, in which instance the Liquidating Trustee shall retain such books and records for at least the minimum period required by applicable non-bankruptcy law.  For purposes of this section, books and records include computer generated or computer maintained books and records and

48

computer data, as well as electronically generated or maintained books and records or data, along with books and records of the Debtor maintained by or in possession of third parties and all of the claims and rights of the Debtor in and to their books and records, wherever located.

**E.      Corporate Action**

On the Effective Date, the Liquidating Trustee may perform each of the actions and effect each of the transfers required by the terms of this Plan in the time period allocated therefor, and all matters provided for under this Plan that would otherwise require approval of the directors or comparable governing body of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the state in which the Debtor is incorporated or organized, without any requirement of further action by the directors (or other governing body) of the Debtor.

**F.      Effectuating Documents and Further Transactions**

The Liquidating Trustee is authorized and directed to execute, deliver, file or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan and the Liquidating Trust Agreement.

**G.      Dissolution of the Debtor**

On the Effective Date, and after the transfer of the Trust Property to the Liquidating Trust, the Debtor shall be deemed dissolved without any further action required, or shall otherwise wind down, under applicable law.

**H.      Procedures for Disputed, Contingent, or Unliquidated Claims**

1.      **Objections to Claims.**  From and after the Effective Date, the Liquidating Trust shall be entitled to object to any and all claims against the Debtor's bankruptcy estate.

2.      **No Distribution Pending Allowance of Claims.**      Notwithstanding any other provision of this Plan, if any portion of a claim is a disputed claim, no payment or distribution provided under this Plan shall be made on account of such disputed claim unless and until such disputed claim becomes an allowed claim.

3.      **Reserves on Account of Disputed Claims.**

49

a.      Establishment and Maintenance of a Reserve for Disputed Claims.  The Liquidating Trust shall maintain a disputed claim reserve (the "Disputed Claim Reserve") at an amount equal to the aggregate of 100% of the distributable amounts to which holders of such disputed claims would be entitled under this Plan if such disputed claims were allowed claims in their disputed claim amounts or such lesser amount as required by a final order of the Bankruptcy Court.  The Bankruptcy Court may fix or liquidate the amount of any disputed claims pursuant to section 502(c) of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed the amounts of the disputed claims for purposes of distribution under this Plan.  In lieu of fixing or liquidating the amount of any disputed claim, the Bankruptcy Court may determine the amount to be reserved for such disputed claim or such amount may be fixed by agreement in writing between the Liquidating Trustee and the holder of a disputed claim.

b.      Distributions upon Allowance of Disputed Claims.  The holder of a disputed claim that becomes an allowed claim shall receive a distribution(s) in cash from the Disputed Claim Reserve as set forth in, and subject to the terms of this Plan and the Liquidating Trust Agreement.  Such distributions shall be made in accordance with this Plan based upon the distributions that would have been made to such holder under this Plan if the disputed claim had been an allowed claim on or prior to the Effective Date.  No holder of a disputed claim shall have any claim against the Disputed Claim Reserve or the Liquidating Trust with respect to such disputed claim until such disputed claim becomes an allowed claim, and no holder of a disputed claim shall have any right to interest on such disputed claim.

**4.      Resolution of Disputed Claims.**  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, following the Effective Date, the Liquidating Trustee shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under sections 328(a), 330 and 503 of the Bankruptcy Code) to make and file objections to claims and shall serve a copy of each objection upon the holder of the claim to which the objection is made as soon as practicable, but in no event later than one hundred eighty (180) days after the Effective Date (subject, however, to the right of the Liquidating

50

Trustee to seek an extension of time to file such objections by seeking such extension with approval from the Bankruptcy Court).

    **5.**      **Estimation.** The Liquidating Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or disputed claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor of the Liquidating Trust previously objected to such claim, and the Bankruptcy Court shall retain jurisdiction to estimate any claim at any time during litigation concerning any objection to any claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated or disputed claim, the amount so estimated shall constitute either the allowed amount of such claim or a maximum limitation on such claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such claim, the Liquidating Trustee may pursue supplementary proceedings to object to the allowance of such claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Effective Date, claims that have been estimated may be compromised, settled, withdrawn or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**I.**      **Distributions to be Made Pursuant to this Plan**

Distributions to be made to holders of allowed claims pursuant to this Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1000, or, if a different address is stated in a proof of claim timely filed with the Bankruptcy Court, to such address. Checks issued to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

**J.**      **Exculpations and Releases**

To the maximum extent permitted by law, ~~neither~~ the Debtor, ~~the Liquidating Trust, the Liquidating Trustee, nor any of their respective employees, officers, directors, shareholders, agents, members, representatives, or~~ Barak Bussel, Ringo Chong together with the professionals employed or retained by ~~any of them, shall~~ the Debtor pursuant to an application filed file, and

approved by, the Bankruptcy Court (the "Professionals"), shall not have or incur any liability to any person or entity for any act taken or omission made in good faith after the Petition Date and on or before the Effective Date in connection with or related to the formulation and implementation of this Plan or the Liquidating Trust Agreement, or any contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of this Plan, or the consummation and implementation of this Plan and the transactions contemplated therein. (the "Exculpated Claims"), except for willful misconduct, gross negligence, or professional malpractice. For the avoidance of doubt, the exculpations and releases provided with respect to the Professionals shall only apply to Exculpated Claims arising during the period such Professional was a Bankruptcy Court-approved Professional and shall not apply to any Exculpated Claims arising prior thereto or thereafter.

**K.    Injunctions**

The Plan Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to this Plan.  Except as provided in this Plan or the Plan Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of a creditor or equity security holder that is extinguished pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions against the Debtor, the Liquidating Trust, or their property on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan.  By accepting distribution pursuant to this Plan, each holder of an allowed claim receiving distributions pursuant to this Plan shall be deemed to have specifically consented to the

injunctions set forth in this Section.

**L.     Executory Contracts and Unexpired Leases**

On the Effective Date, all of the Debtor's remaining executory contracts and unexpired leases which have not previously been assumed or rejected by the Debtor shall be deemed to be rejected. **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR EXECUTORY CONTRACT WHICH IS REJECTED ON THE EFFECTIVE DATE WILL BE THIRTY DAYS AFTER THE EFFECTIVE DATE.** Any claim based on the rejection of an unexpired lease or executory contract will be barred if the proof of claim is not timely filed, unless the Court orders otherwise.

**M.     Changes in Rates Subject to Regulatory Commission Approval**

The Debtor is not subject to any governmental regulatory commission approval of its rates.

**N.     Retention of Jurisdiction**

After confirmation of this Plan and occurrence of the Effective Date, in addition to any jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

i.     To resolve any and all disputes regarding the operation and interpretation of this Plan;

ii.     To resolve any and all disputes regarding the operation and interpretation of the Plan Confirmation Order;

iii.     To determine the allowability, classification, or priority of claims upon objection by the Debtor, the Liquidating Trustee, or any other parties in interest with standing to bring such objection or proceeding and to consider any objection to claim whether such objection is filed before or after the Effective Date;

iv.     To determine the extent, validity and priority of any lien asserted against property of the Debtor or property of the Debtor's estate;

v.     To construe and take any action to enforce this Plan, the Plan Confirmation Order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for

the implementation, execution, performance, and consummation of this Plan and the Plan Confirmation Order, and all matters referred to in this Plan and the Plan Confirmation Order, and to determine all matters that may be pending before the Bankruptcy Court in this case on or before the Effective Date with respect to any person or entity related thereto;

vi.     To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

vii.     To determine any request for payment of administrative expenses;

viii. To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

ix.     To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this bankruptcy case whether before, on, or after the Effective Date including avoidance causes of action, and the Liquidating Trustee shall have the right and standing to commence any avoidance causes of action after the Effective Date and to continue with the prosecution of any avoidance causes of action commenced by the Debtor prior to the Effective Date;

x.     To determine such other matters and for such other purposes as may be provided in the Plan Confirmation Order;

xi.     To modify this Plan under Section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in this Plan or to reconcile any inconsistency in this Plan so as to carry out its intent and purpose;

xii.     Except as otherwise provided in this Plan or the Plan Confirmation Order, to issue injunctions, to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with this Plan or the Plan Confirmation Order, or the execution or implementation by any person or entity of this Plan or the Plan Confirmation Order;

xiii. To issue such orders in aid of consummation of this Plan or the Plan Confirmation Order, notwithstanding any otherwise applicable nonbankruptcy law, with respect

to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

xiv.  To enter a final decree closing this Chapter 11 case.

**~~VIII~~V.  EFFECT OF CONFIRMATION OF THIS PLAN**

**A.  Discharge.**

The Debtor will not receive a discharge under this Plan pursuant to and in accordance with the provisions of Section 1141 of the Bankruptcy Code because this Plan contemplates and will result in a sale or liquidation of all or substantially all of the property of the Debtor's estate.

**B.  Modification of this Plan.**

The Debtor may modify this Plan at any time before confirmation.  However, the Bankruptcy Court may require a new disclosure statement and/or re-voting on this Plan if the Debtor modifies this Plan before confirmation.  The Liquidating Trust may seek to modify this Plan at any time after confirmation of this Plan so long as (1) this Plan has not been substantially consummated, and (2) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

**C.  Post-Confirmation Status Reports and U.S. Trustee Post-Confirmation Report.**

Until a final decree closing the Debtor's Chapter 11 case is entered, the Liquidating Trust will file a quarterly status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.

Within five (5) business days of the Effective Date, the Debtor or the Liquidating Trustee shall file with the Bankruptcy Court a notice of this Plan's Effective Date.  Following the Effective Date, the Liquidating Trustee shall file quarterly post-confirmation reports ("PCR") pursuant to U.S. Trustee Guidelines.  The PCR must be filed every calendar quarter until one of the following occurs: (1) the entry of a final decree; (2) the conversion of the case to a case under another chapter; or (3) the dismissal of the case.

**D.  Post-Confirmation Conversion/Dismissal.**

A creditor or any other party in interest may bring a motion to convert or dismiss the Debtor's Chapter 11 case under Section 1112(b) of the Bankruptcy Code after this Plan is

confirmed if there is a default in performing this Plan. If the Bankruptcy Court orders the Debtor's Chapter 11 case converted to Chapter 7 after this Plan is confirmed, then all property

///

///

///

///

that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to this Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Chapter 11 case. The Plan Confirmation Order may also be revoked under very limited circumstances. The Bankruptcy Court may revoke the Plan Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the Plan Confirmation Order.

##

##

##

##

##

##

##

##

**E.     Final Decree.**

Once this Chapter 11 estate has been fully administered as referred to in Bankruptcy Rule 3022, the Liquidating Trust will file a motion with the Bankruptcy Court to obtain a final decree to close the Debtor's Chapter 11 case. The Liquidating Trust shall be responsible for the timely payment of all fees incurred pursuant to 28 U.S.C. Section 1930(a)(6) from the Trust Assets.

Dated: ~~January 20~~April 10, 2026

56

OSTENDO TECHNOLOGIES, INC.


By:_____
      BARAK BUSSEL, Interim Chief Executive Officer

Presented By:

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK L.L.P.


By:  */s/ Krikor J. Meshefejian*
      RON BENDER
      KRIKOR J. MESHEFEJIAN
      Attorneys for Chapter 11
      Debtor and Plan Proponent

| Summary report: Litera Compare for Word 11.7.0.54 Document comparison done on 4/10/2026 1:10:08 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Plan 01202026.doc | |
| **Modified filename:** Amended Plan 04102026 v1.doc | |
| **Changes:** | |
| Add | 87 |
| Delete | 61 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 148 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2818 La Cienega Avenue, Los Angeles, CA 90034

A true and correct copy of the foregoing document entitled **Notice Of Submission Of Redlines Of Disclosure Statement And Chapter 11 Plan** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On *April 10, 2026* I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- ☐  Ron Bender    rb@lnbyg.com
- ☐  Anthony Bisconti    tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- ☐  Sunil A Brahmbhatt    sunillaw@yahoo.com, G22121@notify.cincompass.com
- ☐  Michael D Breslauer    mbreslauer@swsslaw.com, sdurazo@swsslaw.com
- ☐  Katherine Bunker    kate.bunker@usdoj.gov
- ☐  Robert Carrasco    rmc@lnbyg.com, rmc@lnbyg.com
- ☐  Lisa R Chandler    lisa.chandler@ipfs.com
- ☐  Richard H Golubow    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- ☐  Elan S Levey    elan.levey@usdoj.gov, usacac.tax@usdoj.gov;caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- ☐  Krikor J Meshefejian    kjm@lnbyg.com
- ☐  David Mincin    cburke@mincinlaw.com, dmincin@lawlasvegas.com
- ☐  Kenneth Misken    Kenneth.M.Misken@usdoj.gov
- ☐  Christine Relph    chris.relph@rctlaw.net
- ☐  Allan D Sarver    ADS@asarverlaw.com
- ☐  United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- ☐  Larry D Webb    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com

2. **SERVED BY UNITED STATES MAIL**: On **April 10, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service list attached

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 10, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA OVERNIGHT:**
Honorable Victoria Kaufman
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 354 / Courtroom 301
Woodland Hills, CA 91367

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                         **F 9013-3.1.PROOF.SERVICE**

☐Service list attached

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 10, 2026 | Kayleen Chang | /s/ Kayleen Chang |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                         **F 9013-3.1.PROOF.SERVICE**