Anthony R. Bisconti, State Bar No. 269230
tbisconti@bklwlaw.com
**BIENERT KATZMAN LITTRELL WILLIAMS LLP**
360 E. 2nd Street, Ste. 625
Los Angeles, California 90012
Telephone (213) 528-3400
Facsimile (949) 369-3701

*Attorneys for Creditor Dr. Hussein S. El-Ghoroury*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION

|  |  |
|---|---|
| In re:<br><br>OSTENDO TECHNOLOGIES, INC.,<br>a California corporation,<br><br>        Debtor. | Case No.  1:25-bk-11111-VK<br><br>Chapter 11<br><br>Assigned to Hon. Victoria Kaufman<br><br>**DR. HUSSEIN S. EL-GHOROURY'S OBJECTION TO APPROVAL OF AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN (DATED APRIL 10, 2026)**<br><br><u>Hearing Information</u><br>Date:     May 13, 2026<br>Time:     1:00 p.m.<br>Location: Courtroom 301<br>           21041 Burbank Blvd.<br>           Woodland Hills, CA 91367 |

I.    **INTRODUCTION**

Dr. Hussein S. El-Ghoroury ("Dr. El-Ghoroury"), one of the largest unsecured creditors in this Chapter 11 case, submits this objection to approval of the *Amended Disclosure Statement Describing Debtor's Chapter 11 Plan (Dated April 10, 2026)* (the "Amended DS") filed by Ostendo Technologies, Inc. ("Ostendo" or the "Debtor"). The Court should not approve the Amended DS because it still fails to meet the statutory requirement of containing "adequate information" as required by 11 U.S.C. § 1125.

On January 20, 2026, the Debtor filed its original Disclosure Statement Describing Debtor's Chapter 11 Plan (the "Original DS") [ECF 240] and Chapter 11 Plan [ECF 239]. On February 25, 2026, Dr. El-Ghoroury, the Official Committee of Unsecured Creditors (the "Committee"), and the Office of the United States Trustee (the "OUST") each filed objections to the Original DS, identifying serious and fundamental deficiencies. *See* ECF 274-276. The Debtor has now filed the Amended DS and an Amended Plan (the "Amended Plan") [ECF 297], purportedly to address the objections.

While the Debtor's amendments make certain cosmetic changes, they fail to cure the fundamental deficiencies in the Original DS. The crux of the Amended Plan, like the original, is the establishment of a Liquidating Trust and the appointment of a Liquidating Trustee who will be charged with, among other things, investigating and pursuing claims against the Debtor's current management. Yet the Amended Disclosure Statement still fails to identify the Liquidating Trustee, still fails to address the glaring conflict of interest inherent in allowing the targets of derivative claims to control the selection of the Liquidating Trustee, still fails to provide creditors with the information needed to evaluate the Retained Litigation, and now introduces a new deficiency by explicitly naming Barak Bussel—the very individual accused of breaching his fiduciary duties to Ostendo—as a beneficiary of the Amended Plan's exculpation provision.

As set forth more fully below, the Court should deny approval of the Amended Disclosure Statement until these fundamental deficiencies are corrected.

II.    **STATEMENT OF FACTS**

A.    **Background of the Debtor and the bankruptcy case.**

Dr. El-Ghoroury founded Ostendo in 2005 and served as its Chairman and Chief Executive Officer for nearly 20 years—until his employment was unceremoniously terminated in September 2024. *See* ECF

OBJECTION TO AMENDED DISCLOSURE STATEMENT

70 at 1, 10. Dr. El-Ghoroury is the Debtor's largest unsecured creditor, based on unpaid compensation and Ostendo's failure to perform under its indemnification and advancement obligations.

On June 24, 2025 (the "Petition Date"), the Debtor commenced its Chapter 11 bankruptcy case. The Debtor has filed a liquidating Chapter 11 plan that contemplates the creation of a Liquidating Trust for the benefit of creditors.

**B.      The derivative claims against current management.**

On March 27, 2025—prior to the Petition Date—Dr. El-Ghoroury filed a complaint against Barak Bussel and Babak Razi, individually and derivatively on behalf of Ostendo, for breach of fiduciary duty and negligence, among other causes of action. *See* ECF No. 70 at 11; *see also* ECF 75 Ex. 5 (Derivative Complaint). Messrs. Bussel and Razi are the principals of Third Wave Ventures, LLC, a majority investor in the Debtor, and they now control Ostendo's Board of Directors. Mr. Bussel serves as the Debtor's current Interim CEO and Chairman of the Board. Moreover, Mr. Bussel's wholly owned entity—Rowan Innovations LLC ("Rowen")—is purportedly a secured creditor of the Debtor, attempted unsuccessfully to obtain approval as a DIP lender on onerous terms early in this case, and purchased the Debtor's intellectual property assets during the case—effectively making good on his prior threat to bankrupt the business and acquire its intellectual property at a steep discount.

Dr. El-Ghoroury previously filed a copy of the derivative action against Messrs. Bussel and Razi with the Court. *See* ECF No. 75 Ex. 5. In summary, the derivative complaint details, among other things, that Messrs. Bussel and Razi breached their fiduciary duties of loyalty and good faith by failing to act in the Debtor's best interests and instead acting in their own self-interest; prevented the Debtor from filing bankruptcy or restructuring when it would have been in the Debtor's interest to do so; rejected a deal that allegedly would have settled the Debtor's lawsuits and allowed it to continue using its patented technology because accepting the deal would have interfered with their plan to acquire the Debtor's intellectual property for their own benefit; threatened to "tank" potential deals so that they could acquire the Debtor's intellectual property cheaply, and manufactured false allegations against Dr. El-Ghoroury, orchestrated a board takeover, and terminated Dr. El-Ghoroury's employment to take control of the company and its intellectual property for their personal benefit. The derivative complaint seeks damages of up to $20,000,000 for Ostendo, plus punitive damages.

OBJECTION TO AMENDED DISCLOSURE STATEMENT

**C.      The prior objections to the Original DS.**

On February 25, 2026, three separate objections were filed to the Original DS.

Dr. El-Ghoroury objected that the Original DS (i) failed to provide adequate information about the Liquidating Trust, (ii) failed to identify the Liquidating Trustee, (iii) failed to disclose the terms of the Liquidating Trust Agreement, (iv) failed to explain how the Liquidating Trustee would be selected, (v) failed to disclose or adequately address the derivative claims against current management, (vi) failed to adequately disclose pre-petition mismanagement by current management, and (vii) contained improper exculpation and indemnity provisions. *See* ECF 276.

The OUST objected that the Original DS (i) contained an impermissibly broad exculpation provision that extended to non-fiduciaries and to post-effective date conduct, (ii) failed to carve out willful misconduct, gross negligence, and professional malpractice from the exculpation provision, (iii) provided inadequate information about the Liquidating Trust and Liquidating Trustee, and (iv) contained an indemnity provision that failed to exclude gross negligence. *See* ECF 275.

The Committee objected that the Original DS failed to provide sufficient information concerning the Liquidating Trust and Retained Litigation, including (i) how much claims against Dr. El-Ghoroury could be worth, (ii) the prospects for whether a judgment against Dr. El-Ghoroury would be collectible, (iii) a range of anticipated legal fees and costs that could be incurred in post-confirmation litigation with Dr. El-Ghoroury, (iv) how long any litigation could take, (v) how the litigation would affect the timeline for potential distributions to unsecured creditors, and (vi) whether selling the Retained Litigation claims might be a better alternative to expending limited resources pursuing them.

**D.      The Debtor's amendments do not cure the deficiencies.**

On April 10, 2026, the Debtor filed the Amended DS and Amended Plan, along with redlines comparing the two versions. *See* ECF 296-302. While the amendments make certain changes, they fail to cure the fundamental deficiencies with the Debtor's disclosure statement, as set forth below.

**III.    LEGAL STANDARD**

Section 1125(b) of the Bankruptcy Code prohibits the solicitation of votes on a Chapter 11 plan unless the plan proponent provides "a written disclosure statement approved, after notice and a hearing, by

OBJECTION TO AMENDED DISCLOSURE STATEMENT

the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1125(a)(1) defines "adequate information" as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such hypothetical investor of the relevant class to make an informed judgment about the plan...

11 U.S.C. § 1125(a)(1).

Courts in this circuit have held that the adequacy of a disclosure statement is determined on a case-by-case basis, with courts focusing on whether the information provided enables creditors to make an informed judgment about the plan. *In re Brotby*, 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003); *see also In re Diversified Investors Fund XVII*, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988) (examining the totality of information provided to determine whether creditors could evaluate the plan). The disclosure statement must contain sufficient information to protect creditors against overreaching by plan proponents. *See, e.g., In re Rook Broad. of Idaho, Inc.*, 154 B.R. 970, 976 (Bankr. D. Idaho 1993). The plan proponent has the burden to show its proposed disclosure statement contains adequate information under the facts and circumstances of the case. *See Official Comm. Of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715 (Bankr. E.D. Cal. 1992).

Courts in the Ninth Circuit have consistently required disclosure of pending litigation and potential causes of action belonging to the estate. *See Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 321 (3d Cir. 2003) (to contain "adequate information" disclosure statement must disclose details regarding causes of action debtor may have against third parties); *see also Cleasby v. Security Fed. Sav. Bank*, 243 Mont. 306, 312 (1990) (same). This requirement is particularly important where the causes of action are against insiders or current management, as creditors must be able to evaluate whether the claims will be vigorously prosecuted. When the debtor's current management are targets of estate causes of action, the disclosure statement must explain how those claims will be independently evaluated and pursued. *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136-37 (2d Cir. 1994).

When a plan proposes the creation of a liquidating trust, the disclosure statement must explain how the provisions of the plan, including the establishment of a liquidating trust, will be implemented. This is

4

consistent with the requirement under 11 U.S.C. § 1123 that every plan of reorganization must provide "adequate means for the plan's implementation." 11 U.S.C. § 1123; *Michelson*, 141 B.R. 715 (1992). The disclosure statement must also address why the proposed means of implementation, such as the creation of a liquidating trust, are adequate to achieve the plan's goals. *Id.*

## IV.   ARGUMENT

### A.      The Amended DS still fails to identify the liquidating trustee.

The Original DS was deficient in part due to its failure to identify who the Liquidating Trustee would be. The Original DS stated only that "[t]he Liquidating Trustee shall be identified at least fourteen (14) days prior to the Plan Confirmation Hearing." The OUST, the Committee, and Dr. El-Ghoroury all objected to this deficiency.

The Amended Disclosure Statement does not cure this deficiency. Instead of identifying the Liquidating Trustee, it merely states that "[t]he Debtor is in the process of identifying a Liquidating Trustee and believes it will be able to identify at least one potential candidate by the time of the hearing on this Disclosure Statement." This is not a meaningful improvement. Creditors are still being asked to evaluate the adequacy of the Amended DS—and ultimately to vote on the Amended Plan—without knowing who will be entrusted with pursuing claims on their behalf, what that person's qualifications are, whether that person has any conflicts of interest, or how much they will be paid.

The OUST previously made clear that "[b]ecause the identity of the Liquidating Trustee has not been provided, it is impossible to know if the Liquidating Trustee has any conflicts" and that "[t]here also has been no discussion about the estimated fees of the Liquidating Trustee and any professional which the Liquidating Trustee may use in connection with administering the Liquidating Trust." ECF 275 at 8. The OUST noted that "[t]his lack of information prevents a hypothetical creditor from analyzing whether the fees of the Liquidating Trustee would be more than the estimated administrative expenses for a chapter 7 trustee and the chapter 7 trustee's professionals." *Id*. These same concerns persist with respect to the Amended DS.

While the Amended DS attaches a proposed form of Liquidating Trust Agreement as Exhibit C—thus partially addressing one objection—the attachment of the form agreement without identification of the Liquidating Trustee who will operate under it is an empty gesture. The identity, qualifications, and

OBJECTION TO AMENDED DISCLOSURE STATEMENT

independence of the Liquidating Trustee are the most critical pieces of information creditors need to evaluate this Plan, and the Debtor has still failed to provide that information.

### B. The conflict of interest in the Liquidating Trustee selection remains unaddressed.

The failure to identify the Liquidating Trustee is not merely a procedural deficiency—it is a fundamental flaw that goes to the heart of whether creditors can make an informed judgment about the Amended Plan. The Liquidating Trust will be charged with pursuing claims against, among others, the Debtor's current management—the same individuals who now control the Debtor and this bankruptcy case.

Dr. El-Ghoroury filed derivative claims on behalf of Ostendo against Messrs. Bussel and Razi for breach of fiduciary duty and negligence, seeking damages of up to $20,000,000 plus punitive damages. If recovered, these damages would benefit Ostendo and ultimately its creditors. These claims belong to Ostendo—and by extension, to the bankruptcy estate and the Liquidating Trust if the Court approves the Amended Plan. Notably, the derivative claims allege that Mr. Bussel engaged in conduct to the detriment of Ostendo, threatening to run the company into the ground and then acquire its assets at a steep discount— a threat that has proven prophetic, as Mr. Bussel acquired the Debtor's intellectual property through his wholly owned company Rowen. Yet the Debtor—controlled by Mr. Bussel—will apparently select the Liquidating Trustee charged with deciding whether to pursue those very claims against him.

The Amended DS provides no mechanism for independent oversight of this process, no criteria for selecting a trustee who is free from conflicts of interest, and no assurance that the derivative claims will be vigorously pursued. This creates an obvious conflict of interest that the Amended DS fails to address. The individuals accused of breaching their fiduciary duties to Ostendo—and who are alleged to have engaged in self-dealing that cost Ostendo millions of dollars—remain in control of selecting the very person who will decide whether to pursue claims against them.

Creditors are entitled to know, before voting on the Amended Plan and before the Amended DS is approved, who will be making these critical decisions, how that person is selected, and whether that person is truly independent of the alleged wrongdoers. The Amended DS does nothing to address this fundamental concern.

OBJECTION TO AMENDED DISCLOSURE STATEMENT

**C.    The Amended DS's treatment of the derivative claims remains inadequate.**

The Debtor's amendments do add new language acknowledging Dr. El-Ghoroury's derivative claims against current management. The Amended DS now lists the specific allegations Dr. El-Ghoroury has made against Messrs. Bussel and Razi and acknowledges that his derivative complaint seeks damages of up to $20,000,000 plus punitive damages.

However, the Amended DS frames this disclosure in a misleading manner. It attributes every allegation to Dr. El-Ghoroury's contentions rather than acknowledging that the estate itself owns these derivative claims. It then immediately follows Dr. El-Ghoroury's allegations with a lengthy recitation of the Debtor's management's denials and the Debtor's own extensive claims against Dr. El-Ghoroury. The narrative remains one-sided: while the Debtor devotes extensive space to the claims it believes it has against Dr. El-Ghoroury—including allegations of "more than $300 million of shareholder value" destruction—the disclosure of the derivative claims against current management is framed as merely Dr. El-Ghoroury's "contentions." This framing is particularly problematic given that Messrs. Bussel and Razi served as executives and controlled 50% of Ostendo's board of directors while simultaneously representing its largest controlling shareholder, and that they dictated the company's decision-making and operations.

Moreover, the Amended DS still does not provide creditors with an analysis of the derivative claims' value or merits. Unlike the Debtor's extensive discussion of purported claims against Dr. El-Ghoroury, the Amended DS provides no assessment of the derivative claims' likelihood of success, their potential value, or their impact on creditor recoveries.

**D.    The Amended DS still fails to provide adequate information about the Retained Litigation.**

The Committee previously objected that the Original DS failed to provide a sufficient analysis or estimate of: (1) how much claims against Dr. El-Ghoroury could be worth; (2) the prospects for whether a judgment against Dr. El-Ghoroury would be collectible; (3) a range of anticipated legal fees and costs that could be incurred in post-confirmation litigation with Dr. El-Ghoroury; (4) how long any litigation could take; and (5) how the litigation would affect the timeline for potential distributions to unsecured creditors.

The Committee also noted that the Original DS failed to provide a more thorough analysis of potentially selling the Retained Litigation claims instead of expending limited resources pursuing them.

OBJECTION TO AMENDED DISCLOSURE STATEMENT

As the Committee stated, "[i]ts possible Unsecured Creditors will be willing to risk substantial litigation fees and diluted distributions for the possibility of a larger distribution premised on a successful litigation outcome with Dr. El-Ghoroury. Its also possible Unsecured Creditors will prefer the sale of the Retained Litigation claims in exchange for more certain and expedient distributions. Without the information identified above, they cannot make an informed choice." ECF 274 at 3.

The Amended DS does not address any of these concerns. There is still no estimate of the value of the Retained Litigation claims, no assessment of collectability, no projected range of legal fees and costs,[1] no timeline for how long the litigation might take, no analysis of how the litigation would affect the distribution timeline, and no analysis of the option of selling the Retained Litigation claims. The concerns previously raised by the Committee remain valid and unresolved. The reality of this Chapter 11 estate is that only modest distributions will be made to unsecured creditors, and the concern that post-confirmation administrative fees incurred in litigation could consume those already modest distributions is both legitimate and unaddressed.

**E.      The amended exculpation provision is problematic.**

The Original DS contained a broad exculpation provision that extended to "the Debtor, the Liquidating Trust, the Liquidating Trustee, [and] any of their respective employees, officers, directors, shareholders, agents, members, representatives, or professionals employed or retained by any of them." The OUST objected that this provision was impermissibly broad under Ninth Circuit precedent, extending to non-fiduciaries, covering post-effective date conduct, and failing to carve out willful misconduct, gross negligence, and professional malpractice.

The Amended Plan's exculpation provision partially addresses these concerns by narrowing the scope of the exculpated parties, adding a time limitation (after the Petition Date and on or before the Effective Date), and adding exceptions for willful misconduct, gross negligence, and professional

---

[1] While the Amended Plan and Amended DS state that the Liquidating Trustee's fees and costs for pursuing litigation "shall be paid as a first priority in right of distribution from the Liquidation Trust, subject to a cap of $75,000 [which may be increased with court approval]," it is unclear from the Amended DS whether that cap is on the total fees that may be incurred, or simply a cap on the amount of fees that will be paid on priority, thereby still leaving substantial uncertainty as to the possible significant dilution of funds available for creditors.

OBJECTION TO AMENDED DISCLOSURE STATEMENT

malpractice. However, the amendment introduces a new and deeply troubling problem: it now specifically names "Barak Bussel" and "Ringo Chong" as exculpated parties.

The OUST proposed that the exculpation provision should name "specific employees, officers, directors, shareholders, agents, members, and/or representatives that helped draft" the plan. While naming specific individuals is appropriate in the abstract, the inclusion of Barak Bussel—the individual against whom the estate has pending derivative claims seeking up to $20,000,000 plus punitive damages—raises serious concerns.

This is the same individual who the derivative action alleges breached his fiduciary duties to Ostendo, threatened to "tank" potential deals so he could acquire Ostendo's intellectual property at a steep discount, and then followed through on that threat by acquiring the Debtor's intellectual property via his wholly owned entity, Rowen Innovations, LLC, through a process he controlled on both the buyer and seller side. By specifically naming Mr. Bussel as an exculpated party, the Amended Plan effectively seeks to insulate him from liability for his post-petition conduct—the very conduct that the Liquidating Trustee is supposed to investigate and potentially pursue.

Mr. Bussel's exculpation is particularly inappropriate given the allegations that he breached his fiduciary duties to Ostendo and orchestrated the bankruptcy to benefit himself. The Amended DS fails to explain or justify why Mr. Bussel—a target of derivative claims by the estate—should receive an exculpation in the very plan he is proposing. Creditors are entitled to know how the exculpation of Mr. Bussel will interact with the derivative claims against him and whether the exculpation could limit the estate's ability to recover on those claims.

**F.    The exculpation and indemnity provisions remain problematic.**

Dr. El-Ghoroury previously adopted and incorporated the OUST's objections to the exculpation and indemnity provisions. While the Debtor has made certain amendments to address some of the OUST's concerns—including adding exceptions for willful misconduct, gross negligence, and professional malpractice to the exculpation provision, adding "gross negligence" to the indemnity provision exclusions, and limiting the exculpation to conduct between the Petition Date and the Effective Date—the Amended Plan's exculpation provision still covers "the consummation and implementation of the Plan and the transactions contemplated therein," which arguably extends to post-effective-date conduct.

9

OBJECTION TO AMENDED DISCLOSURE STATEMENT

Moreover, the indemnity provision in the Amended Plan now excludes gross negligence, partially addressing the OUST's prior objection. However, the indemnity provision continues to be funded "solely from the Trust Property," meaning that indemnification of the Liquidating Trustee and his agents comes directly from the assets that would otherwise be distributed to creditors. Combined with the failure to provide any estimate of the Liquidating Trustee's fees or the costs of administering the Liquidating Trust, creditors still cannot evaluate whether the total cost of the Liquidating Trust structure will consume whatever distributions they might otherwise receive.

**G.      The suspicious timing of the bankruptcy filing remains undisclosed.**

The Amended Disclosure Statement still fails to disclose the suspicious timing of the bankruptcy filing. As set forth in Dr. El-Ghoroury's prior objection and his opposition to the DIP financing motion, Mr. Bussel caused Ostendo to file this bankruptcy case only after he was personally sued derivatively for breach of fiduciary duty. The bankruptcy was filed while discovery to Ostendo was outstanding and coming due in Dr. El-Ghoroury's earlier-filed employment lawsuit. This timing suggests that the bankruptcy was filed not to benefit Ostendo or its creditors, but to shield current management from personal liability and facilitate their acquisition of Ostendo's valuable intellectual property at a steep discount—a threat they made long before the bankruptcy case was filed and have since carried out. Creditors are entitled to this information so they can evaluate whether the Amended Plan truly serves their interests or those of the Debtor's conflicted management.

**V.      CONCLUSION**

For the foregoing reasons, Dr. El-Ghoroury respectfully requests that the Court deny approval of the Amended DS.

Dated:  April 24, 2026

BIENERT KATZMAN LITTRELL WILLIAMS LLP
By:  */s/ Anthony R. Bisconti*
    Anthony R. Bisconti
    Attorneys for Dr. Hussein S. El-Ghoroury

10

OBJECTION TO AMENDED DISCLOSURE STATEMENT

| In re: OSTENDO TECHNOLOGIES, INC. | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NO. 1:25-bk-11111-VK |

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

360 E. 2nd Street, Ste. 625
Los Angeles, California 90012

A true and correct copy of the foregoing document entitled **DR. HUSSEIN S. EL-GHOROURY'S OBJECTION TO APPROVAL OF AMENDED DISCLOSURE STATEMENT DESCRIBING DEBTOR'S CHAPTER 11 PLAN (DATED APRIL 10, 2026)** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 24, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender**    rb@lnbyg.com
- **Anthony Bisconti**    tbisconti@bklwlaw.com, 1193516420@filings.docketbird.com,docket@bklwlaw.com
- **Sunil A Brahmbhatt**    sunillaw@yahoo.com, G22121@notify.cincompass.com
- **Michael D Breslauer**    mbreslauer@swsslaw.com, sdurazo@swsslaw.com
- **Katherine Bunker**    kate.bunker@usdoj.gov
- **Robert Carrasco**    rmc@lnbyg.com, rmc@lnbyg.com
- **Richard H Golubow**    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Elan S Levey**    elan.levey@usdoj.gov, usacac.tax@usdoj.gov;caseview.ecf@usdoj.gov;usacac.tax@usdoj.gov
- **Krikor J Meshefejian**    kjm@lnbyg.com
- **David Mincin**    cburke@mincinlaw.com, dmincin@lawlasvegas.com
- **Kenneth Misken**    Kenneth.M.Misken@usdoj.gov
- **Christine Relph**    christine.relph@kts-law.com
- **Allan D Sarver**    ADS@asarverlaw.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Larry D Webb**    Webblaw@gmail.com, larry@webblaw.onmicrosoft.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On April 24, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**James Harold Friesen**
9340 Quinn Rd
Bloomington, MN 55437

**Min Soo Kim**
215 E. Regent St #312
Inglewood, CA 90301

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

| | |
|---|---|
| In re: OSTENDO TECHNOLOGIES, INC. | CHAPTER 11 |
| Debtor(s). | CASE NO. 1:25-bk-11111-VK |

**Keith Thu Lam**
2556 Austin Pl
Santa Clara, CA 95050

**Mincin Law, PLLC**
7465 W. Lake Mead Boulevard, #100
Las Vegas, NV 89128

**Kenny Ngoc Lam**
10 Knollview Dr
Pomona, CA 91766

**Fengchao Xie**
748 Corona Dr
Oceanside, CA 92057

**Guangying Zhang**
11305 Affinity Ct Unit 137
San Diego, CA 92131

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 24, 2026, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 24, 2026 | Anthony R. Bisconti | /s/ Anthony R. Bisconti |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**